225 A.2d 661.

WILLIAM CONTE MILLIKEN *vs.* ELIZABETH ELLEN MILLIKEN.

JANUARY 20, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is a petition for an absolute divorce brought on the authority of G. L. 1956, §15-5-1. It was heard by a family court justice who granted the respondent's motion to dismiss after the petitioner had rested but the respondent had not. The case is before us on both the petitioner's bill of exceptions to and his appeal from the granting of the respondent's motion to dismiss.

This dual posture resulted from petitioner's uncertainty as to the proper procedure for review in this court. At that time it was by way of a bill of exceptions but when argued in this court was by way of an appeal pursuant to the provisions of now G. L. 1956, §14-1-52, as amended, effective January 10, 1966. We deem it advisable to treat the cause as an appeal under the aforecited statute and therefore dismiss the bill of exceptions pro forma. See *Legare* v. *Urso,* 100 R. I. 391, 216 A.2d 506.

The petitioner who is twenty-six years of age testified that he met respondent in 1962, saw her as well as other girls off and on until, one day in mid-August 1963, he and respondent drove to Willimantic, Connecticut, where they obtained a marriage license. It is petitioner's testimony that he thought they were merely out for a ride and only incidentally landed in Connecticut where, what he professed was a surprise to him, respondent told him they were going to get a license.

Two weeks later, Labor Day September 2, 1963, in the company of another couple, petitioner and respondent revisited Willimantic and were married. Again, petitioner

testified, they were just out for a ride and the proposal that they should use the occasion to be married came as a complete surprise. The accompanying couple served as witnesses.

The petitioner related to the court how, after returning from the marriage ceremony, he went to his mother's home to live. The respondent went to her apartment and although the parties subsequently lived under the same roof for a brief period he claimed the marriage was never consummated. Indeed, petitioner insisted he never had sexual relations with respondent at any time.

It appears, however, that petitioner called on his wife at her apartment, helping out in little ways and went there September 9, 1963, one week after the wedding, to hang "like a picture box up on the wall." There, petitioner testified, he found a note on the kitchen table requesting him to go to the Providence Lying In Hospital. Arriving there he asked to see his wife and learned, again to his professed surprise, that respondent had delivered a male child who she informed him was his son.

Continuing, petitioner related how he visited respondent at the hospital during her confinement and was there on the day she was discharged to help her in taking the infant to respondent's apartment. Later in mid-October he, his wife and the child lived at the home of respondent's mother for some two weeks where, petitioner testified, he slept in the same room with respondent but on the floor. About the end of October petitioner and his wife moved to their own apartment where they resided together until he left on the day before Christmas. The petitioner insisted that while so residing he slept at the foot of the bed in which respondent slept. In referring to this latter circumstance petitioner likened himself to "a faithful dog." Several times during his testimony he referred to himself as respondent's "puppet."

On December 31, 1963 he brought the instant petition for an absolute divorce in the nature of an annulment on the ground that the marriage was voidable by reason of respondent's concealing her pregnancy which he alleged resulted from relations with some man other than himself.

In addition to that offered by petitioner, testimony was given by his mother and by a friend. The latter's testimony was intended to corroborate that of petitioner and his mother on the issue of petitioner's two-year residence in this state as required by §15-5-12.

Additionally petitioner's mother attempted to corroborate her son's version of a casual relationship with respondent as completely lacking in intimacy. It is also the thrust of her testimony that respondent's pregnancy was not apparent on close scrutiny as late as the day before the child was born.

At the close of petitioner's case respondent, without resting, moved that the petition be denied and dismissed. In granting this motion the trial justice stated in pertinent part: "The things I must consider are the evidence, the attitudes and the credibility of the parties. The words that were testified to would lend themselves to the denying of the motion, and would support a petition for divorce, if these words could be taken and accepted by the Court as completely credible. I find, however, that they strain, even overstrain, my credibility."

Continuing, the court noted that petitioner first testified that after seeing the child he reported to his mother that he was a father. At this point in the trial petitioner's mother indulged in some outburst for which she was ordered from the courtroom and petitioner then changed his story.

Apropos thereof, the family court justice was convinced that petitioner believed himself to be the child's father but was persuaded by his mother to disavow his parentage and to commence the instant proceeding. There is in the record

a report from The Blood Grouping Laboratory of Boston showing that duplicate blood-typing tests were done and the results do not rule out petitioner as the father.

In addition to his finding that respondent did not fraudulently conceal a pregnancy resulting from sexual relations with some male other than her husband, the court found that petitioner had failed to establish the required two-year residency in this state.

The petitioner contends that the trial justice erred when in passing on respondent's motion to dismiss, made without first resting, he conceded that petitioner had made out a prima facie case if accepted as true, but which he rejected solely on the ground of credibility. The petitioner argues that respondent's motion was made pursuant to the provisions of G. L. 1956, §9-14-22, and that a motion predicated thereon must be viewed by the trial justice in the light most favorable to the party against whom the motion is directed and he may not pass on credibility, citing *Flynn* v. *Byrne,* 82 R. I. 48.

However, respondent urges that such is not the rule in divorce proceedings, relying on *Puhacz* v. *Puhacz,* 55 R. I. 306. In that case the respondent husband moved to dismiss at the close of the petitioner's case without resting and his motion was granted. The petitioner on appeal argued, as does the instant petitioner, that the rule required the trial justice to give full credence to the testimony and view the evidence in the light most favorable to her. This court appears to have rejected that contention and discussed the nature of the state's interest in divorce proceedings, stressing a requirement of affirmative evidence of a convincing nature, both as to the freedom from fault of the petitioner as well as to the guilt of the respondent.

However, the court after reviewing the evidence stated at page 308: "We have examined the transcript and have given the testimony of the petitioner, together with such reasonable inferences that may be drawn therefrom, full

credence in reaching our conclusions." The court then proceeded to find the petitioner's evidence insufficient and overruled her exception.

It would appear therefore that the *Puhacz* case does not clearly stand for the proposition contended by respondent here. Be that as it may, §9-14-22 was enacted some sixteen years after *Puhacz* was decided and we think that the statute is now controlling in divorce proceedings as well as such other causes as the statute encompasses.

We hold, therefore, that it was error for the family court justice not to give petitioner's evidence full credence and to view it in the light most favorable to him, absent respondent resting her case. Whether after resting respondent offered any evidence in resisting the petition is immaterial. It is her failure to rest that precluded the family court justice from considering credibility.

In *Jackowitz* v. *Deslauriers*, 91 R. I. 269, we reiterated this court's adoption of the rule as stated in *Gorman* v. *Hand Brewing Co.*, 28 R. I. 180, namely, that where the positive testimony of a witness is uncontradicted and unimpeached either by other positive testimony or by circumstantial evidence, it cannot be disregarded and must control the decision of the court or the jury on the pertinent issue. The rule thus laid down in the *Gorman* case provided further, however, that such positive, uncontradicted testimony must be free from inherent improbability and self-contradiction which would tend to demonstrate its lack of probative force.

In *Michaud* v. *Michaud*, 98 R. I. 95, 200 A.2d 6, we expressly made the inherently improbable or self-contradicting exception applicable in divorce proceedings.

While therefore the family court justice in the instant cause may well have been justified in rejecting the petitioner's evidence on the authority of the *Gorman, Jackowitz* and *Michaud* cases, he was not at liberty to do so before the respondent rested.

578

The petitioner's appeal is sustained, the judgment appealed from is quashed, and the cause is remanded to the family court for further proceedings in accordance with this opinion.

*Sydney I. Resnick*, for petitioner.

*A. Anthony Susi*, for respondent.