390 A.2d 934 (1978)
William Conte MILLIKEN
v.
Elizabeth Ellen MILLIKEN.
No. 76-350-Appeal.
Supreme Court of Rhode Island.
August 18, 1978.
Moses Kando, Pawtucket, John E. McCann, III, Providence, for petitioner.
Thomas H. Rosenfield, Providence, for respondent.

OPINION
WEISBERGER, Justice.
This is a petition for an absolute divorce brought pursuant to G.L.1956 (1969 Reenactment) § 15-5-1, praying that the marriage between the parties be annulled. It was denied by a Family Court justice after finding that the marriage was not procured by fraud as alleged in the petition. The case is before us on the petitioner William Milliken's appeal pursuant to § 14-1-52 as amended by P.L.1972, ch. 169, § 28 from the decree of the Family Court justice.[1]
This action was previously before us in 1967 on the present petitioner's appeal from the granting of respondent's motion to dismiss the original divorce petition, F.C. 2001-AP, brought in 1963. Milliken v. Milliken, 101 R.I. 572, 225 A.2d 661 (1967). The only question before us in that case was whether the trial justice was entitled to pass on the credibility of petitioner's testimony before respondent had rested her case. The merits were not then in issue, and any conclusions in that decision on any other issue are not now controlling before us. Lancia v. Grossman's of Rhode Island, Inc., 100 R.I. 407, 216 A.2d 517 (1966). We remanded the case *935 to the Family Court for further proceedings in accordance with our opinion on January 20, 1967.
The case was discontinued on May 19, 1967, and a new petition, F.C. 1023-EP, which forms the basis of the present appeal, was substituted for the original petition on May 23, 1967. In it petitioner has included the same grounds for divorce as in his first petition and alleges, among other things, that the marriage was procured by fraud in that respondent concealed her pregnancy which resulted from relations with some man other than himself. After hearing all the evidence in the case, on March 5, 1976, the trial justice entered a decree in which he denied and dismissed the petition for divorce as well as a cross-petition for divorce brought by respondent.
The record before the trial justice reveals the undisputed testimony that petitioner William Milliken and respondent Elizabeth Milliken, then 23 and 24 years of age respectively, drove to Willimantic, Connecticut, on September 2, 1963, and were married there before a justice of the peace. Elizabeth subsequently delivered two children, William, Jr. (first child), born on September 9, 1963, and Christopher (second child), born on April 20, 1965. She testified that both children were the children of petitioner. William, on the other hand, testified that he never at any time had had intercourse with Elizabeth, either before or after their marriage, and that the birth of the first child 7 days after their marriage was a complete surprise to him, as Elizabeth did not appear pregnant even up to the last few days before the child was born. This testimony was corroborated by Theresa Milliken, petitioner's mother, and Dr. Matthew Rossi, who administered a premarital blood test to the couple 12 days before the birth of the child. It was contradicted by Elizabeth's mother who testified that in the summer of 1963 her daughter was obviously pregnant, and by Elizabeth's girlfriend, who testified that on Labor Day weekend, a few days before the child was born, Elizabeth appeared pregnant.
The trial justice rejected the testimony of petitioner and his witnesses and found as a fact that it was "patently obvious" that in the summer of 1963 Elizabeth appeared pregnant and that the child born of that pregnancy was petitioner's child. On the other hand, in denying Elizabeth's cross-petition for divorce, he found that William was not the father of her second child because he was sterile at the approximate time of the child's conception.
On appeal, petitioner contends that the trial justice misconceived the evidence in making the inconsistent findings that William was physically able to be the father of the first child, but not the father of the second child because he was sterile. We are well aware of our long-standing rule that findings of a trial justice will not be disturbed unless clearly wrong, Matracia v. Matracia, R.I., 378 A.2d 1388 (1977), "[n]evertheless, this proposition is subject to the qualification that such deference is not due when the trial justice has misconceived or overlooked material evidence." In re Adoption of a Minor Child, 109 R.I. 443, 452, 287 A.2d 115, 119 (1972). In view of our agreement with petitioner that the trial justice has misconceived the evidence in this case on the issue of the petitioner's sterility, it is unnecessary to consider the other contentions urged by petitioner in his brief.
The trial justice based his finding that petitioner was not the father of the second child on petitioner's exhibit 7, which is a report from the Central Medical Laboratory then on Smith Street in Providence indicating that on October 9, 1964, a test was performed which revealed William was sterile. From this evidence the trial justice inferred that William must have been sterile a few months earlier in July or August of 1964 at the time the second child was conceived, since he could find no "circumstances" on the record which could "lead the court to the conclusion that an intervening condition arose" between the time of conception and the time the test was performed.
The record also indicates that in 1960 William had a severe case of the mumps *936 followed by orchitis, which caused him to be confined to bed for 8 days. Doctor Joseph Parrillo testified that he treated William for the mumps and for the orchitis which followed. He stated that orchitis is a swelling of both testicles which often leaves its victims sterile. Fearing some permanent damage, he advised William to arrange for a sperm count. Apparently William did not act on this suggestion until 1964 when he went to see Dr. Domenico Calise. Doctor Calise was told by Theresa Milliken that William "was in some kind of trouble with some woman," and that he had had the mumps followed by orchitis in 1960. Doctor Calise then requested the test performed at Central Medical Laboratory, a copy of which is petitioner's exhibit 7. Doctor Calise testified on the basis of this test that William could not possibly have fathered the first child.
The uncontradicted cause for the sterility on the record, therefore, is an orchitis condition which preceded any conceivable time of conception of the first child. A trier of fact must accept the uncontradicted and unimpeached positive testimony of a witness as probative of the fact that it was adduced to prove when it is free from inherent contradiction or improbability. Milliken v. Milliken, supra. This rule does not preclude the trier of fact from rejecting evidence that on its face is apparently free from contradiction and inconsistency. However, he should at least briefly state the reasons underlying his rejection. Michaud v. Michaud, 98 R.I. 95, 200 A.2d 6 (1964). His failure to do so in this case leaves the positive, uncontradicted testimony of Dr. Calise concerning the significance of exhibit 7 binding upon him. State v. A. Capuano Bros., R.I., 384 A.2d 610 (1978). If the trial justice accepted petitioner's exhibit 7 as a valid indication that William was sterile, then he must necessarily have concluded that William was sterile at the time of the conception of the first child. The uncontroverted evidence indicates that if petitioner is sterile at all, he has been sterile since his bout with orchitis following the mumps in 1960. We are therefore of the opinion that the trial justice misconceived the evidence in this respect.
Although our conclusion in this case forecloses from further inquiry the issue of the paternity of both children, it need not necessarily dictate a finding that the marriage was voidable as a result of fraud. The trial justice should determine from evidence already on the record and in the light of our holding herein whether there was a sufficient misrepresentation or failure to inform on the part of Elizabeth Milliken in order to vitiate the contract of marriage.
The petitioner's appeal is sustained, the decree appealed from is reversed, and the case is remanded to the Family Court for further proceedings in accordance with this opinion.
NOTES
[1] Although the appeal was purportedly from the decision of the justice, rather than from the decree as required, Poirier v. Poirier, 107 R.I. 345, 267 A.2d 390 (1970); Culpepper v. Martins, 96 R.I. 328, 191 A.2d 285 (1963), we shall treat it as though it were from the decree.