**In re LaFRENIERE.**

**No. 78–283–Appeal.**

Supreme Court of Rhode Island.

Oct. 3, 1980.

William F. Reilly, Public Defender, John A. MacFadyen, III, Asst. Public Defender, for appellants.

Chester G. Lupton, Legal Counsel, Providence, Children and Their Families, for appellees.

## OPINION

DORIS, Justice.

This is an appeal from a Family Court decree terminating the appellants' parental rights to their daughters, Carol and Tina.

In the spring of 1970 the LaFrenieres voluntarily placed two of their children, Carol, then three years and ten months old, and Tina, then ten months old, with the Rhode Island Child Welfare Services (CWS) for temporary care.

On April 10, 1970, Carol was placed in the foster home of Mrs. Josephine Betts. On May 8, 1970, Tina was placed in the foster home of Mrs. Lillian Bertram. Carol and Tina continue to reside in these foster homes.

From the spring of 1970 until February 24, 1975, the placement of Carol and Tina remained voluntary. During this period, despite numerous requests from the LaFrenieres to visit with their children, CWS records indicate that only approximately four visits were arranged between the LaFrenieres and Carol and Tina.

In August 1974, CWS entered into a contractual agreement with the LaFrenieres whereby the LaFrenieres would be permitted to visit with their children on a regular basis if they agreed to undergo psychological evaluations. Pursuant to the terms of this contract, the parents visited with their children once and then because they did not want to be subjected to psychological testing for fear the results would be used to take their children away from them, no further visits were arranged.

On February 24, 1975, CWS filed a petition with the Family Court alleging that Carol and Tina were dependent and neglected. After a series of continuances during which a Family Court justice established and later vacated a visitation schedule for the LaFrenieres with their children,[1] on October 7, 1975, a Family Court trial justice determined that Carol and Tina were dependent and/or neglected pursuant to G.L. 1956 (1969 Reenactment) § 14–1–3, as amended by P.L. 1969, ch. 252, § 1. The Family Court justice found that the LaFrenieres lacked the mental capacity to provide for the intellectual, emotional, religious, hygienic, and medical needs of Carol and Tina and awarded custody of the two children to CWS.

On November 4, 1975, the LaFrenieres filed a motion for review of visitation rights requesting "such visitations as the court shall deem appropriate" with Carol and Tina, and overnight visits with one of their other children.

1. On June 6, 1975, and June 13, 1975, court-ordered visits between the LaFrenieres and Carol and Tina took place. On June 20, 1975, Tina refused to visit with her parents. Carol did visit with them. On June 23, 1975, both Carol and Tina refused to visit with their parents.

This motion was addressed on December 8, 1975, and as a result of this hearing a consent decree was entered February 9, 1976. This consent decree addressed the issue of visitations with one of the LaFrenieres' other children but did not deal with the issue of visitations with Carol and Tina.

On October 28, 1976, CWS filed a petition for terminating the LaFrenieres' parental rights to Carol and Tina.

On November 11, 1976, the LaFrenieres filed a motion for visitation, requesting that they be allowed to commence visitation with Carol and Tina.

On December 17, 1976, a Family Court justice ordered that the motion for visitation be heard in conjunction with the petition for termination of parental rights. CWS records indicate, however, that following this hearing CWS decided that Carol and Tina "should have no contact with their parents since it had been detrimental to their well being in the past."

On October 21, 1977, a Family Court trial justice held that pursuant to G.L. 1956 (1969 Reenactment) § 15–7–7, as amended by P.L. 1970, ch. 132, § 1, the LaFrenieres were guilty of permanent neglect of Carol and Tina and granted the petition for the termination of parental rights.

The LaFrenieres are appealing from this decree. They present four issues for our examination. First, they argue that CWS did not satisfy statutory and constitutional requirements in petitioning for the termination of the LaFrenieres' parental rights. Since we agree that CWS did not comply with the statutory prerequisites, we need not consider the remaining issues that deal with rulings made by the trial justice.

As we previously stated, CWS petitioned the Family Court for a decree terminating the LaFrenieres' parental rights on the ground that the children were "permanently neglected." General Laws 1956 (1969 Reenactment) § 15–7–7 defines a " 'permanently neglected child' " as:

"a person under eighteen (18) years of age who has been placed in the care of an authorized agency * * * and whose

parent or custodian has failed for a period of more than one year * * * following the placement or commitment of such child in the care of an authorized agency, substantially and repeatedly to maintain contact with and plan for the future of the child, notwithstanding efforts which shall be made by the said agency to encourage and strengthen the parental relationship."

 Giving the words of this statute their plain and obvious meaning, as we are required to do when the statute is unambiguous, *Augustine v. Langlais*, R.I., 402 A.2d 1187, 1188 (1979), we believe that it requires the Family Court to examine the conduct of the parents or custodians in conjunction with that of the authorized agency, which in this case is CWS. Thus, the parents' failure to maintain contact with and plan for the future of their children must have occurred despite the efforts of CWS to "encourage and strengthen the parental relationship."

 The trial justice, construing § 15–7–7 to require CWS to make these efforts, found that CWS made "a substantial effort to establish a plan to encourage and strengthen the parental relationship." The findings of a trial justice sitting without a jury are entitled to great weight, and we will not disturb them unless they are clearly wrong or the trial justice misconceived or overlooked material evidence. *Bottomley v. Coffin*, R.I., 399 A.2d 485, 487 (1979); *Milliken v. Milliken*, R.I., 390 A.2d 934, 935 (1978). We believe that in this case the trial justice overlooked material evidence bearing on the efforts made by CWS between 1970 and 1976 to encourage the parental relationship. The record before us is replete with evidence of instances in which the employees of CWS worked to discourage the LaFrenieres from visiting their children. In the winter of 1972 a caseworker noted that Tina's "contact with [her] natural parents is held as little as possible." Another caseworker who had evaluated Carol's situation ended her report with the recommendation that "the visits made with

this family should be few."[2] In 1974 a caseworker noted that "[f]amily visiting has always been discouraged by the family worker, however, at present the family worker is taking steps to initiate some movement in the LaFreniere situation." Again in 1974 Mr. Ottaviano, the caseworker assigned to Carol, wrote: "[w]e have tried to work with both parents to allow the three children to continue in foster care or terminate for adoption. * * * We should block any attempt by the parents [to obtain] custody by asking for temporary custody."

 These documents evince an attempt on the part of the caseworkers to discourage visits between the LaFrenieres and their children in favor of encouraging the relationship with the foster families. This action is irreconcilable with the duty imposed by § 15–7–7 "to encourage and strengthen the parental relationship." It does not matter that the actions discouraging the visits occurred prior to the time during with the LaFrenieres were accused of permanent neglect. The obligation of CWS to foster the parental relationship is of a continuing nature–it may not merely be contemporaneous with the failure of the parents to maintain contact with and plan for the future of their children. We therefore hold that by discouraging family visits during the years the children were living in foster homes, CWS did not comply with the requirements of § 15–7–7 to strengthen the parental relationship and is thus precluded from seeking to terminate the rights of the LaFrenieres on the ground of permanent neglect. We express no opinion on whether CWS may seek to terminate the parental rights on other grounds.

The appellants' appeal is sustained, the judgment below is reversed, and the case is remanded to Family Court for further proceedings.

KELLEHER, Justice with whom WEISBERGER, Justice, joins, concurring.

While CWS has failed to satisfy all of the facets of the permanent–neglect proviso, the record before us contains a strong suggestion that the parents of Carol and Tina lack the necessary intellect and mental capabilities to properly discharge their parental obligations. Consequently, since the overriding concern of all should be the children's best interests, I would suggest that the department return to the Family Court and there seek a termination of the LaFrenieres' parental rights by invoking that portion of § 15–7–7 which provides for a termination on a showing of parental "mental incapacity."

**2.** The caseworkers who subsequently supervised Carol's placement evidently followed this advice. A report made after a January 1975 conference among the CWS employees stated that following her placement in the foster home in 1970 Carol had had approximately four visits with her parents.