**In re KENNETH.**

**No. 80–535–Appeal.**

Supreme Court of Rhode Island.

Jan. 14, 1982.

Linda Quaranto D'Ambra, Legal Counsel, Dept. for Children and Their Families, providence, for petitioner.

Joseph A. Capineri, Pawtucket, for respondent.

OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the petitioner, the Department for Children and Their Families (the department), from a decree of the Family Court denying and dismissing its petition seeking a termination of the parental rights of the respondent, Kenneth's mother,[1] pursuant to G. L. 1956 (1969 Reenactment) § 15–7–7, as amended by P.L.

---

1. The father had voluntarily relinquished his parental rights on September 21, 1979.

1970, ch. 132, § 1, on the ground that Kenneth was "permanently neglected."[2]

A hearing on the petition was held in 1980, and the following testimony and evidence were adduced. The respondent married Kenneth's father on February 3, 1962, and lived with him and their five children in Blackstone, Massachusetts, until September of 1974. At that time, she left her husband and family because conditions became "unbearable" due to her husband's drinking and physical abuse.

The respondent moved to Texas and then to Long Beach, California, where she met her present husband, Richard Krause, in 1975 while he was in the Navy. The respondent testified that during this time she repeatedly attempted to contact her children by telephone but that the father prevented her from doing so first by refusing to let the children speak to her and subsequently by obtaining an unlisted telephone number.

Meanwhile, Kenneth's father filed for and obtained a divorce in the Commonwealth of Massachusetts. The decree awarded custody of the children to the father and contained a provision denying respondent visitation privileges. The respondent was not served in the divorce action; therefore, she was not aware of the proceedings and was not represented in the action. At this time, the father entered into a relationship with another woman who was separated from her husband and who also had children. The father and the children from both families began living with the woman in her home in Woonsocket, Rhode Island.

The department became involved in Kenneth's case on March 4, 1976, when it received a battered-child report from Woonsocket Hospital indicating that Kenneth had been seriously bruised and apparently had been beaten. The following day, the department filed an ex parte petition alleging that Kenneth was dependent and neglected and seeking his custody. After a hearing, a decree was entered on April 21,

---

**2.** General Laws 1956 (1969 Reenactment) § 15–7–7, as amended by P.L. 1970, ch. 132, § 1, defined a "permanently neglected child" as follows.

> "[A] person under eighteen (18) years of age who has been placed in the care of an authorized agency, either in an institution, foster home, or the home of a relative and whose parent or custodian has failed for a period of more than (1) year, or such lesser period as may be set by the court upon ex parte petition of the agency, following the placement or commitment of such child in the care of an authorized agency, substantially and repeatedly to maintain contact with and plan for the future of the child, notwithstanding efforts which shall be made by the said agency to encourage and strengthen the parental relationship."

Between the time of the filing of the petition and the entry of the decree the statute was amended by P.L. 1980, ch. 364, § 2. The amendment changed the criteria to be considered in determining whether the conduct of the parent necessitates involuntary termination of parental rights. The amendment reads in pertinent part as follows.

> "The court shall, upon a petition duly filed after notice to the parent and hearing thereon, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child if the court finds as a fact that notwithstanding reasonable efforts which shall be made by the said agency to encourage and strengthen the parental relationship:
>
> \* \* \* \* \* \*
>
> "(c) The parent has a child in the care of a licensed or governmental child placement agency, either voluntarily or involuntarily, for a period of at least six (6) months and the court further finds that the integration of the child into the home of the parent is improbable in the foreseeable future due to conduct or conditions not likely to change. The court shall review the initial conduct or conditions which caused the child to come into the care of the licensed or governmental child placement agent and determined whether there has been a change in the circumstances of the parent. In determining such conduct or conditions the court shall consider the lack of a good faith effort of the parent over a continuous period of six (6) months after placement to adjust his circumstances, conduct or conditions to make the return of the child possible or the failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such an extended duration of time that it appears reasonable that no lasting adjustment can be affected."

1976, awarding custody to the department until further order of the court. Shortly, thereafter, Kenneth[3] was placed in a foster home. Subsequently, in December 1977, the father voluntarily placed his youngest child, Jessica, in foster home care in Massachusetts.

Approximately one year after leaving her family, respondent remarried and attempted to see Kenneth in Rhode Island. The respondent first came in contact with the boy's caseworker on September 30, 1976, when respondent flew to Rhode Island from Memphis, Tennessee, where her husband was stationed. The caseworker admitted at the hearing that upon respondent's arrival, the caseworker refused to allow respondent to visit with Kenneth because of the divorce decree in effect. The caseworker further stated that as long as the decree remained unmodified, respondent would not be permitted to visit Kenneth. The caseworker also admitted that no plans and no action had been taken to reunite respondent with Kenneth.

In November of 1977, Kenneth's case was assigned to another caseworker and a similar pattern prevailed. The respondent contacted the caseworker several times, and the caseworker reprimanded her for not giving up her parental rights. In addition respondent was told that the department had no intention of relinquishing custody because it was in Kenneth's best interests to remain with the foster parents and be adopted by them. The caseworker both informed respondent that she could not visit with Kenneth and refused to give her the address of the foster parents. In October of 1977, respondent and her husband moved to Maine and with the help of Massachusetts authorities, eventually obtained custody of her daughter Jessica.

The record shows that Dr. Vsevolod Sadovnikoff, a clinical psychiatrist, and Jay Kaplan, a clinical psychologist, testified at the hearing. The psychiatrist concluded that Kenneth had a positive relationship with his foster family and that to remove him "would be detrimental to his emotional welfare." However, he qualified this opinion on cross-examination by stating that he did not mean that Kenneth could not return to his natural mother if such reunification were preceded by appropriate visitation and appropriate counseling of the natural mother and Kenneth.

Kaplan testified that he thought it best that Kenneth remain with the foster parents without contact with the natural mother. However, he stated that if they were to be reunited, it would have to be done on a gradual basis. Finally, the trial justice asked the boy if he would want to return to his mother. He responded that he did not want to leave his foster home but that he would like to see his mother and sister.

The record also contains two reports issued by the state of Maine describing in very favorable terms the home environment of respondent and her husband; and one report indicated that respondent should have an opportunity to provide a home for Kenneth.

After reviewing the evidence, the trial justice found that the department had not complied with the statutory duty to encourage a relationship between Kenneth and his natural mother. Specifically, the justice found that the department failed to show that it had made reasonable efforts to encourage and strengthen the parental relationship during any twelve-month period between April 21, 1976 and March 28, 1979. During this period, he stated, respondent made repeated efforts to gain custody and visitation with her child, which efforts were blocked by the department's social workers.[4] The trial justice further found that respondent had established a proper home

3. Kenneth was six years old at the time, having been born on August 28, 1970.

4. The record also discloses that such efforts failed because of the inaction of respondent's attorneys. The evidence indicates that respondent and her husband retained counsel at various times to help her obtain visitation with and custody of Kenneth through a modification of

with adequate facilities for Kenneth and that she could provide the "care, love and attention he needed; that accordingly, she had adequately planned for the future of [Kenneth] * * *." Therefore, the petition was denied and dismissed and Kenneth was ordered with his mother to be referred for "psychological and/or psychiatric evaluation" to determine the best way ultimately to reunite Kenneth and his mother.

The only issue to be considered on appeal is whether the department complied with the statutory requirements of § 15–7–7 for the termination of parental rights.

The department contends that the trial justice misconstrued § 15–7–7 and that he overlooked and misconceived material evidence adduced at trial establishing the department's compliance with the statutory requirements. The department further argues that respondent failed to maintain contact with, and plan for, the future of her child despite the department's efforts to reunite the two. The department also argues that it is in Kenneth's best interests to remain with his foster parents. The respondent contends that the department precluded her from visiting Kenneth. She further asserts that the evidence presented at trial supported the trial justice's conclusion that it is not contrary to Kenneth's best interests to remove him by a gradual process from his foster home and to return him to his mother.

Section 15–7–7 requires as a condition precedent to termination of parental rights that the department prove by clear and convincing evidence that, regardless of the parent's behavior, the department made efforts to encourage and strengthen the parental relationship. *In re Armand*, R.I., 433 A.2d 957 (1981); *In re LaFreniere*, R.I., 420 A.2d 82 (1980).

 In cases involving termination of parental rights, the court must balance the interests of all the parties: the state, the parents and the minor child. *In re David*,

R.I., 427 A.2d 795, 801 (1981). However, although the rights of parents are an essential consideration, "the best interests and welfare of the child outweigh all other considerations." *In re Lester*, R.I., 417 A.2d 877, 880 (1980). Nevertheless, we have held that unless the child "is likely to suffer physical and/or emotional harm, there is no reason to disturb the basic security of a family relationship." *Id.*, 417 A.2d at 880 (quoting *In re Jonathan*, R.I., 415 A.2d 1036, 1039 (1980)).

 In considering the instant case, this court gives great weight to the findings of the trial justice. On review, his findings of fact will not be disturbed unless they are clearly wrong or unless he misconceived or overlooked material evidence. *In re Joseph*, R.I., 420 A.2d 85 (1980); *In re LaFreniere*, *supra*. Therefore, this court's function on review is to examine the record to determine whether there is legally competent evidence to support the findings of the trial justice.

 A scrutiny of the record reveals overwhelmingly that the department failed to comply with the statutory requirements conditional to seeking termination of parental rights. By its own admission, the department did nothing to effectuate reunification or to encourage planning for Kenneth's future with the mother. The department did attempt to justify its conduct by claiming that a Massachusetts divorce decree prohibited visitation by the mother. We are of the opinion that the trial justice was correct when he completely rejected this argument.

The record is replete with further evidence demonstrating that the department was against any reunification of the child and the mother. There is evidence in the record that the department told the mother to refrain from attempting to see the child and that the department would not relinquish custody of Kenneth, stating that his best interests required adoption. The rec-

the divorce decree. The attorneys, however,

never sought such modification.

ord, therefore, clearly establishes that the department failed to carry out its statutory obligation "to encourage and strengthen the parental relationship." In contrast, the record contains overwhelming evidence that the mother made numerous attempts to see the child and that she was repeatedly in contact with the department to make arrangements to be in communication with Kenneth and to plan for his future.

Furthermore, even though the experts testified that it would be in the best interests of the child to remain with the foster parents, they did admit that if Kenneth were to be reunited with the mother, the best way to handle this reunification would be on a gradual basis. The trial justice considered this evidence and, instead of ordering the child to be returned to his mother immediately, ordered a preliminary series of examinations and counselings and continued the case for further review.

Therefore, we are of the opinion that the trial justice's finding that the department failed to meet its statutory obligation by clear and convincing evidence is amply supported by the record and that the trial justice was not clearly wrong, nor did he overlook or misconceive material evidence on this controlling issue.

The department's appeal is denied and dismissed, and the decree appealed from is affirmed.