**In re ARMAND and Rodney.**

**No. 78–284–Appeal.**

Supreme Court of Rhode Island.

Aug. 20, 1981.

William F. Reilly, Public Defender, Mary Nagle, Asst. Public Defender, for plaintiff-respondent.

Roberts, Carroll, Feldstein & Tucker, Chester G. Lupton, Providence, for defendant-petitioner.

## OPINION

MURRAY, Justice.

On February 23, 1977, the Child Welfare Services Division of the Department of Social and Rehabilitative Services (CWS),[1] filed petitions in the Family Court seeking permanent termination of the parental rights of the respondent to her sons, Armand and Rodney. The petitions alleged that the children were permanently neglected in that the respondent had "failed for a period of more than one (1) year substantially and repeatedly to maintain contact with and plan for the future of said child[ren]." Following a hearing, a Family Court justice found that the children were permanently neglected. Decrees were subsequently entered terminating the parental rights of the respondent and giving the Department of Social and Rehabilitative Services the exclusive right to place the children for adoption and to give or to withhold consent for the same.[2] The respondent is now before us on an appeal from the trial justice's determination. We find no merit in the issues raised by the respondent and affirm the decrees entered below.

The proceedings in the Family Court involved two of respondent's three children: Armand, born on March 18, 1973; and Rodney, born on February 14, 1975.[3] The record in this matter reveals the following facts. On March 19, 1975, respondent voluntarily placed Armand and Rodney with CWS because she was unable to cope with the responsibilities of caring for three children. Both children were temporarily placed in separate foster-care homes. On April 3, 1975, CWS petitioned the Family Court, seeking an adjudication that the two children were dependent and neglected. At a hearing on the petitions, respondent admitted the agency's allegations. The children were found to be dependent, and custody of the children was awarded to CWS.

After Armand and Rodney had been in foster-care homes for almost two years, CWS filed the instant petitions, pursuant to G.L.1956 (1969 Reenactment) § 15–7–7, as amended by P.L.1970, ch. 132, § 1, alleging

1. The responsibilities of the Department of Social and Rehabilitative Services with respect to abused and neglected children were transferred to the Department for Children and Their Families with the establishment of that department by P.L.1979, ch. 248, § 1.

2. The parental rights of the putative fathers of Armand and Rodney had previously been terminated in separate proceedings in the Family Court and are not involved in the present appeal.

3. The respondent's third child, Richard, born on January 26, 1972, was not the subject of CWS's termination-of-parental-rights petition.

that the children were permanently neglected[4] and seeking termination of respondent's parental rights to them. The substance of the evidence presented at the hearing[5] by CWS in support of the petitions can be briefly summarized. The caseworkers and the supervisors responsible for Armand's and Rodney's welfare testified that during the time in which the children were in foster-care homes, CWS encouraged respondent to visit with the children and to interact with their foster parents. In order to facilitate respondent's contact with the children, CWS arranged times for visitation and also provided transportation for the children. Despite these efforts made by CWS, respondent at times would cancel the scheduled visitation or would either fail to appear or arrive late. There was also a three-month period, one caseworker testified, during which CWS was unable to contact respondent despite CWS's efforts to locate her through her family and friends.

In light of respondent's demonstrated inconsistency in keeping visitation appointments, CWS continued to schedule visitation with the children on a monthly basis at the Children's Center in Providence. In order for respondent to visit with the children, it was necessary for her to telephone the children's caseworker two days in advance to confirm the scheduled visit. The respondent's failure to confirm would result in the cancellation of the visit. Although respondent did, in fact, visit with the children on several occasions during the period referred to by CWS in the petitions, a number of scheduled visits were canceled because respondent did not comply with the confirmation procedure. During the visitations that did take place, the caseworkers testified that there was only minimal interaction between respondent and the children.

CWS caseworkers also testified that they had met with respondent at different times in an attempt to discuss planning for respondent's needs as well as for the future of the children. Specifically, CWS urged respondent to seek psychological counseling and offered to refer her to the Providence Mental Health Clinic. The respondent, however, despite complaints about "depression," refused to attend for fear that people would think she was "crazy." The agency further encouraged respondent to obtain suitable housing and to participate in a vocational-training program as further means to stabilize her life and to facilitate the return of the children to her.

At the conclusion of the hearing, the trial justice, in a lengthy and comprehensive decision in which he reviewed the testimony of all the witnesses who had appeared before him, stated:

"Armand and Rodney have been placed in foster care by the agency since March 1975; and based on the testimony * * * the court further finds as a fact * * * that the agency through the efforts of its [case]workers did fulfill the statutory burden imposed upon it by * * * affording to the respondent visitation with the children. Although visitation was afford-

4. At all times relevant to this controversy, G.L. 1956 (1969 Reenactment) § 15–7–7, as amended by P.L.1970, ch. 132, § 1, in pertinent part provided:

"A 'permanently neglected child' is a person under eighteen (18) years of age who has been placed in the care of an authorized agency, either in an institution, foster home, or the home of a relative and whose parent or custodian has failed for a period of more than one year * * * following the placement or commitment of such child in the care of an authorized agency, substantially and repeatedly to maintain contact with and plan for the future of the child, notwithstanding efforts which shall be made by the said agency to encourage and strengthen the parental relationship."

Subsequent to the hearing in this matter, the Legislature amended § 15–7–7 with its enactment of P.L.1980, ch. 364, § 2. The enactment changed substantially the criteria to be used by the Family Court in determining whether a parent's rights to a child should be terminated. These amendments, however, do not affect the case at bar.

5. The hearing in this matter was conducted in the Family Court over the course of six days. The record indicates, however, that respondent was absent during several sessions of the hearing. The respondent claimed these absences were due to illness and the unavailability of transportation to the courthouse.

ed to the mother on a monthly basis, it was at first, scheduled on a weekend basis, but because of the ambivalence of and inconsistency of maintaining same by the respondent, caused the rearrangement to month-to-month intervals, without objection by the respondent. The exigency of the circumstances dictated the change. Additionally, in a further attempt to reunite the children with the mother, the court further finds as a fact * * * that [the caseworkers] advised the respondent that counseling was available to her at mental health clinics, which counseling would be hopefully helpful in providing stability and direction in her life style. Such efforts, however, were nonetheless fruitless in that respondent refused to attend. Based upon the aforesaid testimony adduced from the [case]workers, the court further finds * * * that the respondent failed to substantially and repeatedly maintain contact with and plan for the future of the child[ren]. Each attempt made by the [case]workers * * * who advised the respondent of her responsibility to meet and plan for the temporal well-being of the youngsters, was futile. It seems that the respondent manifested, at least in 1976, an intention of maintaining more frequent visitation, but the record is devoid of even a modicum or scintilla of evidence, which would cause the court to conclude that the mother indicated any interest in meeting the needs of the children. It would appear that she was content in being a surrogate mother, and thereby permitting the agency to plan for the future needs of her children.

"Turning to the best interests of the children, having in mind that Rodney was one month old at placement, and is now three years old and Armand, now age five, and in foster care since age two, to defer adoption would only serve to diminish their chances of being adopted. By affording them that mechanism as provided by statute, the children can be pro-

vided with permanency, stability, and the security of a home environment, all of which temporal necessities the respondent has heretofore not only failed to so provide, but [has] not even overtly considered."

Relying on these findings, the trial justice held that Armand and Rodney were permanently neglected within the meaning of § 15–7–7 and granted the petitions for termination of parental rights.[6]

On appeal, respondent claims that the trial justice erred in finding that the children were permanently neglected. Specifically, she contends that there was not sufficient evidence introduced at the hearing upon which the trial justice could conclude that (1) she had failed substantially and repeatedly to maintain contact with and plan for the future of the children and (2) CWS had made efforts to encourage and strengthen her parental relationship with the children. In view of CWS's failure to satisfy these statutory requirements, respondent argues, the trial justice erred in granting the petition to terminate her parental rights.

As we have previously noted, CWS's petitions for termination of respondent's parental rights alleged that the children were "permanently neglected." General Laws 1956 (1969 Reenactment) § 15–7–7, as amended by P.L.1970, ch. 132, § 1, defines a "permanently neglected child" as

"a person under eighteen (18) years of age who has been placed in the care of an authorized agency, either in an institution, foster home, or the home of a relative and whose parent or custodian has failed for a period of more than one (1) year * * * following the placement or commitment of such child in the care of an authorized agency, substantially and repeatedly to maintain contact with and plan for the future of the child, notwithstanding efforts which shall be made by the said agency to encourage and strengthen the parental relationship."

6. Subsequently we issued an order staying the effect of the decrees entered in this matter pending our review of the trial justice's deter-

mination. *In re Armand and Rodney*, R.I., 397 A.2d 527 (1979).

■ The purpose of a termination-of-parental-rights proceeding based upon allegations of permanent neglect is "to determine whether the parent has manifested, despite the child's placement out of the home, the sense of responsibility, interest and affection essential to the reestablishment of parental care for the child." (Footnote omitted.) *In the Matter of Stephen B.*, 60 Misc.2d 662, 665, 303 N.Y.S.2d 438, 442 (1969). We have said that this section requires a trial justice, considering a petition to terminate parental rights, to examine the conduct of the parents or the custodians in conjunction with that of the authorized agency, which in this case is CWS. Thus, as a condition precedent to termination of respondent's parental rights in the instant case, CWS was required to demonstrate that respondent's failure to maintain contact with and plan for the future of her children occurred despite its efforts to encourage and strengthen her parental relationship with them. *In re David, R.I.*, 427 A.2d 795, 797 (1981); *In re LaFreniere, R.I.*, 420 A.2d 82, 84 (1980); *see In re Ray A. M.*, 48 A.D.2d 161, 165–66, 368 N.Y.S.2d 374, 378–79 (1975) (Martuscello, Acting P. J., dissenting).

Our review of termination of parental-rights-statutes reveals that New York's definition of a "permanently neglected child" found in the N. Y. Family Court Act § 611 (McKinney)[7] is substantially similar to our definition of the term in § 15–7–7. Decisions of courts in that jurisdiction interpreting the requirements imposed on the parent and on the authorized agency under the statute therefore merit discussion here.

■ Section 15–7–7 imposes two requirements on a parent whose children are in the care of an authorized agency: (1) to maintain contact with the children and (2) to

plan for the children's future. The section specifies that the parent must perform these duties "substantially and repeatedly." It is clear that the requirement that a parent maintain contact with her children in a foster-care home must not be interpreted to mean simply an occasional period of visitation, but rather a "meaningful contact where a parent has exercised her parental obligation and has provided love, affection and guidance" to her children. *In the Matter of Klug*, 32 A.D.2d 915, 916, 302 N.Y. S.2d 418, 420 (1969) (Tilzer, J., concurring). Thus, just as important as the frequency and continuity of contact between a parent and her children is the substance and character of the contact.

■ The concomitant requirement that the parent plan for the future of the children places the responsibility "to formulate, and act to accomplish, a feasible and realistic plan." *Matter of Orlando F.*, 40 N.Y.2d 103, 110, 351 N.E.2d 711, 715, 386 N.Y.S.2d 64, 67 (1976); *Matter of Stephen B.*, 60 Misc.2d 662, 668, 303 N.Y.S.2d 438, 444, *aff'd sub nom. Matter of Behrman*, 34 A.D.2d 527, 309 N.Y.S.2d 864 (1970); *see also Matter of Orzo*, 84 Misc.2d 482, 489, 374 N.Y.S.2d 554, 562 (1975). The requirement that the parent plan for the future of his or her children is imposed so that the parent can recognize the temporary nature of his or her children's placement with the agency. In planning for the children, the parent should formulate and adopt a plan that expresses a realistic intention to establish, some time in the future, a home for his or her children in which they can be provided with a sound and constructive family life. The parent must also perform some minimal act toward the fulfillment of that plan.

■ There is no precise standard by which it can be determined whether a par-

---

**7.** New York Family Court Act § 611 (McKinney), in pertinent part, reads as follows:

"A 'permanently neglected child' is a person under eighteen years of age who is in the care of an authorized agency, either in an institution or in a foster home, and whose parent or custodian has failed for a period of more than one year following the date such child came into the care of an authorized

agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the moral and temporal welfare of the child."

ent has complied with the statutory mandate to maintain contact with and plan for the future of the children. The conduct of the parent must be examined in light of the particular facts of each case, and the totality of the circumstances must be scrutinized and weighed carefully.

Section § 15–7–7 further imposes an obligation upon the authorized agency to make efforts to strengthen and to encourage the parent's relationship with his or her children. Recently, the New York Legislature codified several judicial decisions that had interpreted this statutory mandate. The enactment that is now found as N. Y. Social Services Law § 384–b, ¶ 7(f) at 228 (McKinney) (1980–81 Cum.Supp.), states that "diligent efforts" as used within that jurisdiction's definition of a "permanently neglected child" means

"reasonable attempts by an authorized agency to assist, develop and encourage a meaningful relationship between the parent and child, including but not limited to:

(1) consultation and cooperation with parents in developing a plan for appropriate services to the child and his family;

(2) making suitable arrangements for the parents to visit the child;

(3) provision of services and other assistance to the parents so that problems preventing the discharge of the child from care may be resolved or ameliorated; and

(4) informing the parents at appropriate intervals of the child's progress, development and health."

The trial justice, applying the pertinent guidelines of § 15–7–7 to the evidence presented to him, specifically found that CWS had fulfilled its statutory burden by arranging and facilitating periodic visitation for respondent with the children and by offering and encouraging her to seek psychological counseling and vocational training in order to inject some degree of stability and direction into her life. The trial justice found, however, that respondent did little, apart from visiting the children, to facilitate their return to her.

■■■ We have consistently held that the findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed by this court unless the findings are clearly wrong or the trial justice misconceived or overlooked material evidence. *In re Joseph*, R.I., 420 A.2d 85, 89 (1980); *In re LaFreniere*, R.I., 420 A.2d at 84; *Milliken v. Milliken*, R.I., 390 A.2d 934, 935 (1978). After thoroughly reviewing the record in this matter, we conclude that the trial justice neither misconceived nor overlooked material evidence bearing on respondent's failure to maintain contact with and plan for the future of her children despite the efforts of CWS to nurture and reestablish her relationship with them. Nor are we able to say that the trial justice was clearly wrong in concluding that Armand and Rodney were permanently neglected within the meaning of § 15–7–7. Indeed, the evidence adduced at the hearing below not only was sufficient but also fully supported the trial justice's determination that the statutory requirements for such an adjudication had been met by clear and convincing evidence.[8]

The testimony elicited at the hearing from the supervisors and caseworkers at CWS adequately documented the efforts the agency made to encourage and strengthen respondent's parental relationship with Armand and Rodney. The efforts made by CWS in this regard were appropriate under the particular circumstances of this case. In our view, however, respondent's failure to maintain contact with her children with some degree of regularity and

---

**8.** The provisions of the version of § 15–7–7 in effect at the time of the determination of this controversy did not specify the quantum of proof required to establish neglect in a termination-of-parental-rights proceeding. Recently, however, in *In re David*, R.I., 427 A.2d 795 (1981), we determined that the petitioning agency must prove neglect by clear and convincing evidence. We noted also in *In Re David* that the Legislature's subsequent amendment of § 15–7–7 by P.L.1980, ch. 364, § 2 specifically provides for such a standard of proof. *Id.* 427 A.2d at 800 n.5.

her failure to make even a minimal attempt to implement a plan for their return to her, despite the efforts of CWS, warranted the imposition of the drastic remedy of permanent severance of respondent's parental tie to her children.

The respondent, by her conduct over this period, has not manifested the ability to stabilize her life sufficiently to provide the kind of consistent love and care that young children such as these require. We are thus convinced, as was the trial justice, that the best interests of Armand and Rodney will be served by terminating the respondent's parental rights, thereby freeing them for adoption.

Accordingly, the respondent's appeal is denied and dismissed. The decrees appealed from are affirmed, the stay heretofore issued in this matter is hereby dissolved, and the case is remanded to the Family Court.

SHEA, J., did not participate.