**In re GABRIEL G.**

**No. 82–142–Appeal.**

Supreme Court of Rhode Island.

May 26, 1983.

Thomas M. Bohan, Legal Counsel for Dept. for Children and Their Families, Providence, for petitioner.

Harold E. Krause, Jr., Providence, for respondent.

## OPINION

SHEA, Justice.

This appeal is before the Supreme Court from a decision of the Family Court terminating the parental rights of the respondent-father (father), to his son, Gabriel. The mother of Gabriel was also named as a respondent in the same petition. Her parental rights were terminated simultaneously with the father's, but she has not appealed. The petition filed by the Department of Children and Their Families (department) alleged as grounds the provisions of G.L.1956 (1981 Reenactment) § 15-7-7(b)(1) and (c). After hearing, the Family Court rendered a decision granting the agency's petition on both grounds alleged, made the agency the sole party to give or withhold consent to the adoption of Gabriel, and appointed the agency as his sole guardian. The father has appealed from the decision of the Family Court. We affirm.

The uncontradicted evidence established that both the mother and the father are mentally retarded, and in addition, the father suffers from chronic schizophrenia. At about the time Gabriel initially came under the care of the agency, the father and the mother were separated; they later divorced. The mother was remarried by the time of the hearing on the petition to terminate to a man who apparently would not accept Gabriel into his home.

Gabriel, born February 20, 1974, came into the temporary custody of Child Welfare Services, the predecessor agency for the Department of Children and Their Families, as a result of an ex parte order of detention issued by the Rhode Island Family Court. This placement occurred on April 23, 1979, after Child Welfare Services had filed a petition alleging that the child was dependent and neglected. Later, when the father as well as the mother admitted that the child was dependent, the allegations of child neglect were withdrawn by the agency. Following this admission by the parents, the Family Court found Gabriel to be dependent and committed him to the care, custody, and control of the department. He has been in foster care since that time. At the time of the hearing on the termination petition, Gabriel was seven years and ten months of age.

After Gabriel was placed in foster care, certain emotional problems were observed. As a result of these developments, the agency arranged to provide examinations and counseling for Gabriel, as well as for the mother and the father at the Emma Pendleton Bradley Hospital. The records of Bradley Hospital indicate that Gabriel is a bright and intelligent child who was able, with treatment and counseling, to overcome the problems that brought him to their attention. However, clinical interviews with the father did not yield such a positive diagnosis. The Bradley Hospital staff physician's report diagnosed the father as mentally retarded and recommended individual therapy. On referral by the agency, a subsequent evaluation was conducted in October of 1980. At this time the father was working steadily as a janitor at one of the state college facilities. He lived alone in a two-bedroom home that he rented. The evaluation supported previous findings that the father had serious psychological deficiencies. It went on to state that the father was living in a fantasy world, a world of truth that was created in his own mind. His behavior was frequently socially inappropriate, obtrusive, and frightening to the average person. The report concluded that the father was not capable of adequately raising the child.

Furthermore, an independent psychiatrist appointed by the court found the father to be unable to give a reliable history of himself. He found that the father suffered from mental retardation and also suffered from either a thought disorder or chronic schizophrenia. The psychiatrist concluded that the father lacked any insight into his condition and that although he had been treated at Providence Mental Health, he did not believe he had any problems warranting treatment.

Initially, plans had been made for reunification involving regular visitation with the boy and counseling for the father. However, as the father's personal problems and deficiencies evidenced themselves, it became apparent that the conditions that prevented reunification and caused, in part, the initial placement of Gabriel in foster care would not change in the foreseeable future.

Section 15–7–7 sets forth the necessary elements that must be established for a petition to terminate parental rights. That section provides in part:

"Termination of parental rights.—The court shall, upon a petition duly filed after notice to the parent and hearing thereon, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child if the court finds as a fact that notwithstanding reasonable efforts which shall be made by the said agency to encourage and strengthen the parental relationship:

\* \* \* \* \* \*

(b) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to the following:

(1) Emotional illness, mental illness, mental deficiency or institutionalization of the parent including imprisonment, of such duration as to render it improbable for the parent to care for the child for an extended period of time.

\* \* \* \* \* \*

(c) The parent has a child in the care of a licensed or governmental child placement agency, either voluntarily or involuntarily, for a period of at least six (6) months and the court further finds that the integration of the child into the home of the parent is improbable in the foreseeable future due to conduct or conditions not likely to change. The court shall review the initial conduct or conditions which caused the child to come into the care of the licensed or governmental child placement agency and determine whether there has been a change in the circumstances of the parent."

■ Under § 15–7–7(b)(1) the agency must demonstrate, by clear and convincing evidence, that the parent is unfit by reason of conduct or conditions seriously detrimental to the child and that it is improbable that the parent will be able to care for the child for an extended period of time.

■ Under § 15–7–7(c) the agency must demonstrate, by clear and convincing evidence, that it has cooperated with the parent to design an appropriate program; has made suitable arrangements for visitation; has provided services and other assistance so that the problems preventing discharge from foster care may be resolved or ameliorated; and has informed the parent of information about the child's health, progress, and development. *In re Kathaleen,* 460 A.2d 12 (R.I.1983); *In re William,* R.I., 448 A.2d 1250, 1257 n. 3 (1982); *In re Armand,* R.I., 433 A.2d 957, 962 (1981).

■ Our review of the record convinces us that the petitioning agency has met its burden of proof by clear and convincing evidence. The child has been in the care of an agency for more than six months, and reasonable efforts have been made by the agency, all things considered, to effect a reunification. The father's mental retardation and chronic schizophrenia, established by uncontradicted evidence, are conditions that are not likely to improve in the foreseeable future; and competent medical opinion in the record is to the effect that the mental retardation coupled with the chronic mental illness render the father incompetent to raise Gabriel.

In view of the above, we find that the Family Court justice was fully justified, on the basis of the evidence before him, in ordering that the father's parental rights be terminated.

The appeal is denied and dismissed, and the case is remanded to the Family Court for proceedings consistent with this opinion.