**In re LORI D.**

**No. 85–217–Appeal.**

Supreme Court of Rhode Island.

June 6, 1986.

Laureen Quaranto D'Ambra, Dept. for Children & Their Families, for petitioner.

William F. Reilly, Public Defender, Janice M. Weisfeld, Barbara Hurst, Asst. Public Defenders, for respondent.

OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the petitioner, the Department for Children and Their Families (DCF), from a decree of the Family Court denying and dismissing its petition seeking a termination of the parental rights of the respondent, Lori's mother, pursuant to G.L. 1956 (1981 Reenactment) § 15–7–7(b)(1) and (c), as amended by P.L. 1984, ch. 204, § 3. After hearing, the Family Court granted respondent's motion to dismiss, stating that DCF failed to make suitable efforts to effectuate a reunification of parent and child. The DCF has appealed from the decision of the Family Court. We reverse.

The record reveals the following facts. Lori D. was born in May 1977 and has been in the custody of DCF since January 2, 1980, when DCF was awarded temporary custody of the child by the Rhode Island Family Court on an ex parte order of detention arising from an allegation of sexual abuse by the mother's boyfriend. In March 1980 the natural parents of Lori admitted that the child was dependent, and the Family Court thus committed Lori to the care, custody, and control of DCF.

In October 1982 DCF filed a termination-of-parental-rights petition pursuant to

§ 15–7–7 (b) (1), (c), and (d). The petition alleged that the child had been in the care of DCF for a period of at least six months and that the integration of Lori into the home of the parents was improbable in the near future owing to conduct or conditions unlikely to change. The petition also alleged that the mother was unfit to care for Lori by reason of emotional illness, mental illness, and mental deficiency of such duration that it was improbable that she would be able to care for the child for an extended period of time. The petition further alleged that Lori's father had abandoned or deserted the child, there being a complete lack of communication for at least six months.

The parental rights of Lori's father were terminated in January 1983 due to his failure to appear after receiving notice of the proceedings and being defaulted. However, the termination petition was dismissed as to the mother in April 1983 on the ground that DCF had failed to make reasonable efforts to strengthen the parental relationship prior to the commencement of termination proceedings.

A new case plan was formulated for the reunification of Lori with her mother and approved by the Family Court in May 1983. The record shows, however, that this attempt at reunification was unsuccessful, and DCF once again petitioned the Family Court to terminate the mother's rights. Concurrently, Lori's mother filed motions to dismiss DCF's petition, as well as motions for increased visitation. The trial justice refused either to grant or to dismiss said petitions after a full hearing. Instead, a consent decree memorializing a new reunification plan was entered into by both parties in July 1984. The new plan called for increased nonovernight visitation between mother and child, and an agreement that DCF would collaborate with the Rhode Island Association of Retarded Citizens (RIARC) to develop an individualized reunification plan for Lori and her mother. Consequently, the parties participated in the development and progression of an eight-week program that provided intensive in-home services and instruction for mother and child for thirty hours per week. However, the testimony of the home-skills instructor revealed that there was a lack of sufficient progress on the part of Lori's mother at the end of the program, and the plan was therefore discontinued. Since in its opinion the reunification plan had failed, DCF filed a motion to proceed with the termination petition that had been held in abeyance pending the completion of the eight-week program.

Trial commenced in the Family Court on January 28, 1985. At the outset, a defense motion was filed by the child's mother seeking to limit DCF's evidence to the time periods prior to the filing of the petition in April 1984. She alleged that the evidence concerning the eight-week home-skills program should not have been admitted because it was DCF's duty to make reasonable reunification efforts prior to the time when it files a termination petition. The trial justice disagreed, ruling that at least with respect to § 15–7–7(c), the court could consider reunification efforts made at any time, even after the filing of the petition.

At trial, oral testimony was elicited from a number of experts, all of whom had extensive personal knowledge of the case. The DCF's first substantive witness was James Healy, executive director of RIARC. Mr. Healy testified at length concerning the eight-week program that had been established on behalf of Lori and her mother. He stated that it was the consensus of those involved in the program that it should be terminated. Mr. Healy opined that the likelihood of a successful reunification is doubtful where, as here, both mother and child possess limited intelligence and have been separated for four to five years. He further stated that he doubted whether borderline retarded persons could raise children absent twenty-four-hour supervision.

Also called to the stand by DCF was Spencer Devault, a clinical psychologist who examined both the mother and her

daughter. Devault testified that he had been engaged by DCF in March 1984 to conduct an evaluation of Lori and her mother, focusing specifically on the mother's ability to function independently and to serve as a parent for Lori. In addition to administering a battery of standardized psychological tests, Dr. Devault observed Lori's mother in her home on two separate occasions, once alone and once while Lori was present in order to assess the bonding that existed between mother and child. The psychologist also visited Lori's foster home, where he interviewed Lori's foster parents and observed the interaction and bonding between Lori and this family. Dr. Devault testified that he found respondent to be a dependent, rather immature, and passive woman who was mildly depressed. Although he found that respondent's motivations to care for Lori were in order, Dr. Devault questioned her ability to handle pressure situations or to function independently. The psychologist concluded that at least for the foreseeable future, respondent would not be able to take care of both Lori and herself adequately if Lori were living with her.

Testimony was also received from department caseworkers who had been assigned the task of supervising Lori and developing a viable reunification plan. Gloria Manna and Mary Mulcahey, two social workers assigned to the case, gave testimony regarding both the first and the second reunification plans developed on behalf of Lori and her mother. Additionally, testimony was elicited from Denise Berthelette, the homeskills instructor who worked with respondent to improve her parenting skills. Ms. Berthelette testified that despite the eight-week program formulated by DCF and RIARC, Lori's mother still encountered great difficulty when faced with abstract tasks such as setting limits or maintaining discipline. Finally, testimony was taken from Ms. Lucille Capobianco, a school psychologist who interviewed Lori and her mother during the eight-week program. Ms. Capobianco stated that the increased visitation between Lori and respondent caused Lori's behavior to regress to the point where counseling for Lori was suggested.

At the close of the evidence, the trial justice granted respondent's motion to dismiss, finding that DCF had failed to make reasonable reunification efforts. The sole issue on appeal is whether the trial justice misconceived or overlooked material evidence or was clearly wrong in granting respondent's motion to dismiss the termination petition.

The DCF's main contention at this state of the proceedings is that there is ample evidence in the record that bolsters its contention that reasonable efforts were undertaken to strengthen and reunify this family. In support of this proposition, DCF cites its collaboration with RIARC in the creation of a unique, individualized eight-week program that had never before been implemented. The DCF's view is that overall, the efforts undertaken on behalf of respondent constituted extraordinary efforts under the circumstances and that the trial justice's dismissal based on a lack of reasonable efforts was clearly wrong and misconceived.

The respondent contends that DCF's reunification plan did little more than provide for increased visitation between Lori and her mother. Moreover, she maintains that the eight-week program developed on her behalf was poorly implemented and doomed to fail because no one ever explained to Lori the intent of the program, nor were provisions made at this time to provide for independent psychological counseling for the child.

Section 15–7–7 governs termination-of-parental-rights proceedings in this jurisdiction. The statute provides in relevant part:

"The court shall, upon a petition duly filed after notice to the parent and hearing thereon, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent

adoption proceedings involving the child if the court finds as a fact that:

\* \* \* \* \* \*

(b) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to the following: (1) Emotional illness, mental illness, mental deficiency or institutionalization of the parent including imprisonment, of such duration as to render it improbable for the parent to care for the child for an extended period of time.

\* \* \* \* \* \*

(c) The parent has or has had a child in the care of a licensed or governmental child placement agency, either voluntarily or involuntarily, for a period of at least six (6) consecutive months and the court further finds that the integration of the child into the home of the parent is improbable in the foreseeable future due to conduct or conditions not likely to change.

\* \* \* \* \* , \*

The standard of proof shall be by clear and convincing evidence." Section 15–7–7.

■ Thus, the statute provides as a condition precedent to termination that DCF make reasonable efforts to strengthen and encourage the family relationship prior to filing a termination-of-parental-rights petition. *In re Crystal A.*, 476 A.2d 1030, 1033 (R.I. 1984). The DCF has the duty of proving by clear and convincing evidence that it has cooperated with the parent(s) to design an appropriate program for reuniting the family, including suitable arrangements for visitation and the provision of services to solve the problems which prevent reunification. *Id.* ; *In re Gabriel G.*, 460 A.2d 441, 443 (R. I. 1983); *In re Kathaleen*, 460 A.2d 12, 14 (R.I. 1983). We have recently stated that when reviewing the requirement that DCF make reasonable efforts to strengthen the parental relationship, this court must consider the totality of the circumstances of each particular case. *In re Crystal A.*, 476 A.2d at 1033.

■ The trial justice found that DCF failed to meet its statutory burden of proving by clear and convincing evidence that it had made reasonable efforts to effectuate a reunification of Lori and her natural mother. In a review of cases involving termination of parental rights, this court must examine the record to determine whether there is legally competent evidence to support the findings of the trial justice. *In re Kenneth*, 439 A.2d 1366, 1369 (R.I. 1982). The court gives great weight to the findings of the trial justice, and on review those findings will not be disturbed unless they are clearly wrong or unless the judge misconceived or overlooked material evidence. *Id.*

A scrutiny of the record convinces us that the trial justice committed reversible error in granting respondent's motion to dismiss. When ruling on such a motion, it is the duty of the trial justice to examine the evidence in the light most favorable to the petitioner. Only if there is no legally competent evidence to support the position of the party opposing the motion should said motion be granted.

In the case at bar, the record is replete with evidence that DCF attempted to reunite and strengthen this family. Although increased visitation rights and the creation of an individualized, novel eight-week program may in the final analysis be deemed insufficient in light of DCF's statutory duty to make reasonable efforts to reunite this family, we find that the aforementioned efforts, when viewed in the light most favorable to DCF, constitute evidence that is sufficient to overcome a motion to dismiss. We therefore find that the trial justice abused her discretion in granting respondent's motion to dismiss.

■ Finally, DCF has argued that the trial justice committed error in deciding to limit the evidence of DCF's efforts to reunite the family to the period of time prior to the filing of the termination petition. However, we find this argument to be totally meritless and unsupported by the

record. Although counsel for the mother did argue at trial that DCF should not be permitted to introduce evidence of the eight-week reunification program because this program was created after the petition was filed, the trial justice overruled this defense objection and admitted evidence of the program. Moreover, in the recent case of *In re Ann Marie*, 504 A.2d 464 (R.I. 1986), this court determined that the scope of a trial court's inquiry in parental termination proceedings under § 15–7–7(c) is not limited to events occurring prior to the filing of the petition.

The petitioner's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Family Court for further proceedings consistent with this opinion.