**In re NICOLE G. et al.**

**In re DAMIYANA S. et al.**

Nos. 89–63–M.P., 89–232–M.P.

Supreme Court of Rhode Island.

July 5, 1990.

Janet Gilligan, Dept. of Children & Their Families, Providence, for petitioners.

Catherine A. Gibran, Office of Public Defender, Providence, for respondents.

Paula Lynch Hardiman, Providence, for amici curiae, Amos House, McAuley House, South Providence Neighborhood Ministries and Dorcas Place Parent Literacy Center.

Steven Fischbach, Rhode Island Legal Services, Providence, for amici curiae, Project B.A.S.I.C.

Laureen D'Ambra and Thomas R. Finn, Office of Child Advocate, Providence, amici curiae.

## OPINION

FAY, Chief Justice.

This matter comes before the Supreme Court by means of consolidated petitions for certiorari of the Department for Children and Their Families (DCF). The petitions seek review of two Family Court decrees ordering DCF to provide housing assistance to the families of children under its care as part of its efforts to reunify the families. Although the question presented in these cases was moot at the time the writs of certiorari were issued by this court, we issued the writs because we believe that the question is likely to arise again in the future.[1]

Specifically stated, the question is whether the Family Court may order DCF to provide housing assistance to the families of children in its care as part of DCF's statutory duty to make reasonable efforts to reunite families under G.L.1956 (1988 Reenactment) § 15–7–7, when the court first finds that family reunification cannot be achieved because of a family's homelessness. We answer in the affirmative.

■ Section 15–7–7(2)(a) requires that prior to granting a petition for termination of parental rights, the trial justice must find that DCF made reasonable efforts to encourage and strengthen the parental relationship. Thus it is apparent that DCF has an ongoing duty to make reasonable efforts to reunify the families of children in its care.

■ In *In re Armand,* 433 A.2d 957 (R.I.1981), this court adopted guidelines earlier enunciated by the Legislature of the State of New York to judge DCF's compliance with the reasonable-efforts requirement. Under these guidelines the agency must demonstrate by clear and convincing evidence that it (1) has consulted and cooperated with parents in developing a plan for appropriate services to the child and his/her family; (2) has made suitable arrangements for visitation; (3) *has provided services and other assistance to the parents so that problems preventing discharge from foster care may be resolved or ameliorated;* and (4) has informed the parents about the child's health, progress, and development. *Id.* at 962. Employing these guidelines, the Family Court determines whether under the totality of the circumstances DCF has made reasonable efforts to reunify the family.

We believe that in cases in which homelessness is found to be a primary factor preventing reunification of a family, it is rational for the Family Court to find that reasonable efforts have not been made unless and until DCF provides some type of housing assistance. In such cases housing assistance is the precise type of service contemplated by guideline No. 3; it is assistance designed to resolve or ameliorate the problems preventing discharge from foster care.

■ Furthermore, because DCF's reasonable-efforts duty arises as soon as it assumes custody of a child, we find no reason to require the Family Court to sit idly by until a termination petition is filed. We believe that the more reasoned ap-

---

1. Since the question is moot in regard to these particular cases, we shall not recite the facts because they are no longer relevant. It is sufficient to state that the Family Court ordered DCF to provide housing assistance in each case, after determining that homelessness was a primary factor preventing reunification of the mothers with their children.

proach is to allow the Family Court to order DCF to provide housing assistance prior to the filing of a termination petition as long as it first finds that a lack of adequate housing is the primary factor preventing reunification.

In opposing the Family Court's authority to make such orders, DCF raises several arguments, none of which we find persuasive. The department argues first that the Legislature did not create or envision it as a housing or income-maintenance agency and second that if the Family Court is allowed to order it to make rental-subsidy payments, critical moneys and energies will be diverted from its primary mission of preserving and reunifying families. Contrary to DCF's assertions, there is no language contained in G.L.1956 (1988 Reenactment) chapter 72 of title 42 that indicates that the Legislature did not intend for DCF to provide housing assistance as part of its services. Section 42–72–5, as amended by P.L.1989, ch. 126, art. 39, § 3 provides in part:

> "Powers and scope of activities.—(a) *The department shall be the principal agency of the state to mobilize the human, physical and financial resources available to plan, develop, and evaluate a comprehensive and integrated statewide program of services designed to insure the opportunity for children to reach their full potential.* The services shall include prevention, early intervention, out-reach, placement, care and treatment, and after-care programs. The department shall also serve as an advocate for the needs of children." (Emphasis added.)

The state's policy set forth in § 42–72–2 includes the responsibility to help parents meet their obligations to their children and to provide services designed to prevent the unnecessary removal of children from their homes. In view of these policies, we believe that the provision of housing assistance is well within the scope of DCF's powers.

■ We are somewhat puzzled by DCF's argument that the provision of rental subsidies will result in the diversion of funds from its primary mission of preserving and reunifying families because reunification is the primary goal of the court-ordered housing assistance. Furthermore, given the cost of subsidizing foster care for multiple children, it seems likely that cash disbursements for housing assistance will be more cost effective in the long run. This is especially true in light of the temporary nature of the court-ordered housing subsidies. The rental-subsidy payments are a stopgap measure designed to enable a reunifying family with no savings and little or no income to raise the security deposit and the first few months' rent needed to secure new housing.[2] The housing assistance is not to be continued indefinitely. We are confident that the Family Court will structure its orders sensibly with an eye toward DCF's budgetary constraints and will not order DCF to continue to subsidize families who show no signs of becoming financially independent. To ensure that the orders are not open-ended, the Family Court should implement a case-review system whereby the court will review the status of each family periodically, no less frequently than once every six months, in order to determine the continuing necessity for and appropriateness of the housing assistance as well as the extent of progress that the family has made toward becoming self-sufficient.[3]

---

**2.** Amici curiae have demonstrated the importance of these "start-up" subsidies to families who were receiving Aid to Families with Dependent Children (AFDC) prior to their break-up. When DCF removes children from the home of an AFDC-assisted family, the family stands to lose some of or all its income, depending on the number of children remaining in the home. If all children are removed, the family loses its AFDC grant. The parent or parents of formerly eligible AFDC children must reapply to the Department of Human Services for AFDC when children and parents are reunited. An eligibility decision on the new application can take up to thirty days. Once the family receives its full AFDC grant, the family is more likely to be able to afford its monthly housing expenses. Until that time, however, the family will need assistance.

**3.** This case-review system is similar to that mandated by Public Law 96–272, the Adoption Assistance and Child Welfare Act of 1980 (the act), 42 U.S.C.A. § 670 through § 676. The act,

Next DCF argues that since G.L. 1956 (1985 Reenactment) § 8–10–3, as amended by P.L.1988, ch. 84, § 7 does not expressly empower the Family Court to order DCF to make rental-subsidy payments, the Family Court has no such authority. We disagree.

It is true that this court has stated many times that the authority of the Family Court to act must be expressly conferred by § 8–10–3. *In re Debra*, 445 A.2d 577 (R.I.1982); *Paolino v. Paolino*, 420 A.2d 830 (R.I.1980). Nonetheless we have also stated that "the Family Court has the power to enter such decrees and orders as may be necessary or proper to carry into full effect all the powers and jurisdiction conferred upon it by law." *Goldstein v. Goldstein*, 109 R.I. 428, 430, 286 A.2d 589, 591 (1972). Under the Family Court Act, the Family Court is charged with securing for each child under its jurisdiction "such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state." G.L.1956 (1981 Reenactment) § 14–1–2. The act is to be "liberally construed to the end that families whose unity or well-being is threatened shall be assisted and protected, and restored, if possible, as secure units of law-abiding members." Section 8–10–2. Thus, in situations in which reunification is in the best interests of the children and the State, the Family Court undoubtedly has the power to enter orders designed to bring about such reunification.

The final challenge DCF makes to the housing-assistance orders is that these orders violate the separation-of-powers clause of the Rhode Island Constitution. Article V of the Rhode Island Constitution states: "[T]he powers of the government shall be distributed into three departments: the legislative, executive and judicial." The Constitution further provides that the legislative power is vested in the General Assembly (article VI, section 2), the judicial power is vested in the Supreme Court and such other inferior courts established by the General Assembly (article X, section 1), and the executive power is vested in the Governor (article IX, section 1). Interference with its budget and its allocation of resources, DCF argues, constitutes an encroachment on its powers as an arm of the executive branch of government. We disagree.

It is clear that the jurisdictions of the courts and the agencies interact over a broad range of situations, many of which are not clearly demarcated. In matters of custody and termination of parental rights, DCF cannot act outside the authority of the court. Although DCF has, in the first instance, responsibility for developing and implementing case plans, it is the Family Court that must decide whether DCF's efforts toward reunification have been sufficient. If a trial justice determines that DCF's efforts have not been sufficient, he or she does not make the department guess what more it should do but rather makes an order directing it to provide whatever service was lacking. This procedure does not violate the separation-of-powers doctrine unless, in carrying out the order, DCF would be forced to incur a debt. Although DCF argues that Family Court-ordered housing assistance will require it to incur a debt, the department presents no evidence in support of this allegation. We are per-

which amended the Social Security Act, was designed to lessen the emphasis on foster-care placement and to encourage greater efforts to find permanent homes for children either by making it possible for them to return to their own families or by placing them in adoptive homes. The act provides funds for foster-care maintenance but conditions State eligibility on, among other things, the implementation of a case-review system. 42 U.S.C.A. § 671(a)(16). The case-review system requires that

"the status of each child is reviewed periodically but no less frequently than once every six months by either a court or by administra-

tive review (as defined in paragraph (6)) in order to determine the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, and the extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care, and to project a likely date by which the child may be returned to the home or placed for adoption or legal guardianship." 42 U.S.C.A. § 675(5)(B).

The case-review system is designed to inform the court about any change in circumstances affecting the reunification process.

suaded that the housing assistance may, in fact, be more cost effective in the long run if it succeeds in eliminating the expense of foster care in some cases.

Furthermore we believe that the Legislature intended for the court to provide a check on DCF's powers, to protect families from hasty and routine terminations by ensuring that adequate services have been provided prior to termination. Without the power to remedy inadequacies, this check would be illusory.

For the foregoing reasons the petitions for certiorari are denied and dismissed, the writs heretofore granted are quashed, and the papers in this case are remanded to the Family Court with our decision endorsed thereon.