**In re AMANDA M. et al.**

**No. 92–525–M.P.**

Supreme Court of Rhode Island.

June 25, 1993.

Miguel daCosta, Kevin Aucoin (DCYF), Susan Fink (CASA), for plaintiff.

Mary Tudino, Providence, for defendant.

OPINION

SHEA, Justice.

This matter comes before the Supreme Court by way of a petition of the plaintiff, the Department for Children, Youth and Families (DCYF), for certiorari to review an order of a Family Court justice granting the request of the defendant, Dawn McCormick (the mother), for the payment of one month's rent on her apartment. We reverse the Family Court order for the payment of one month's rent.

The mother's problems with the neglect of her children, Amanda (aged six) and Brittany (aged two), extend back to September of 1991. On September 6, 1991, DCYF received a report alleging that one of the mother's boyfriends had sexually molested Amanda. The DCYF investigated the incident and thereafter filed an abuse-and-neglect petition in Family Court, whereupon DCYF was granted temporary custody of Amanda and placed her with the maternal grandmother.

The mother admitted to being homeless in December of 1991. In an effort to allow Brittany to remain at home with her, DCYF assisted in obtaining housing and funded the first and last months' rent. Subsequently, on February 11, 1992, the mother admitted use of cocaine to a DCYF social worker and was referred to alcohol and drug rehabilitative services. A "petition for neglect and/or dependancy" was filed in regard to Brittany, who was still at home, on the basis of the mother's admissions.

On February 28, 1992, the mother admitted to neglect. Amanda and Brittany were both committed to the care, custody, and control of DCYF. Both were placed with the maternal grandmother by order of the Family Court. As part of the plea agreement the Family Court justice further ordered the mother to get substance-abuse treatment and attend individual-counseling and sexual-abuse-counseling sessions for nonoffending parents. The DCYF was ordered to fund the first and the last months' rent to allow the mother to obtain appropriate residence. Brittany was to be returned

to the mother after four weeks, and Amanda was scheduled to be returned at the end of the school year. The mother complied with the requirements outlined in the order, and Brittany was returned in April and Amanda in June.

In July 1992 the mother voluntarily placed Amanda back with the maternal grandmother because of the child's unhappiness. At the six-month case review in August of 1992, the Family Court justice issued a restraining order in which he restrained and enjoined the mother's boyfriend, Thomas Watson, from being in the children's presence. The Family Court justice relied on Watson's long criminal record, the mother's corresponding deterioration in sobriety when associated with Watson, and her previous failure to protect Amanda. Brittany remained at home, but Amanda was ordered to remain placed with the maternal grandmother on the basis of the fact that the mother had already voluntarily placed her there in July.

Only one month after the review, DCYF filed an emergency motion for change of placement and suspension of overnight visitation. This motion came on for a hearing on September 29, 1992. The basis of the motion was that the mother had violated the previous order and had continued to allow Watson to live in her home. In addition the mother had begun to regress in her alcohol-and drug-treatment program, producing "dirty" urine screens on August 14 and August 23, 1992, and failing to contact the program from September 1 through September 10, 1992, and again from September 12 through September 19, 1992.

The hearing justice ordered Brittany to be removed from the home and placed her with the maternal grandmother. At the request of the mother, DCYF was ordered to fund one month's rent. The DCYF sought a stay of the rent order, and it was denied. That rent order is the issue that brings this case before us for review.

■ The defendant contends that since the rent has been paid, the issue is moot. We disagree. Although it would clearly be impracticable to order that the rent be paid back by the mother in this case, we shall address the issue of the Family Court's order of a rental payment for future applications. Even if this court finds an appeal moot on the particular facts before us, we have stated that

"[a]s a general rule we only consider cases involving issues in dispute; we shall not address moot, abstract, academic, or hypothetical questions. * * * This rule is not absolute, however. Although moot, questions of extreme public importance, which are capable of repetition, but which evade review, command our attention and will be addressed." *Morris v. D'Amario*, 416 A.2d 137, 139 (R.I.1980).

The issue before us is certainly capable of repetition, and we find it a matter of extreme public importance to clarify the obligations of DCYF in future similar situations.

■ We have held repeatedly that the authority of the Family Court to act in a given situation must be expressly conferred by G.L.1956 (1985 Reenactment) § 8–10–3, as amended by P.L.1992, ch. 326, § 1. *In re Nicole G.*, 577 A.2d 248, 251 (R.I.1990)(citing *In re Debra*, 445 A.2d 577 (R.I.1982); *Paolino v. Paolino*, 420 A.2d 830 (R.I.1980)). *See also Christensen v. Christensen*, 121 R.I. 272, 397 A.2d 900 (1979). The Family Court does have, however, "the power to enter such decrees and orders as may be necessary or proper to carry into full effect all the powers and jurisdiction conferred upon it by law." *Goldstein v. Goldstein*, 109 R.I. 428, 430, 286 A.2d 589, 591 (1972).

Pursuant to G.L.1956 (1988 Reenactment) § 15–7–7, as amended by P.L.1992, ch. 206, § 2, DCYF has a duty to make reasonable efforts to reunite families. *In re Kenneth*, 439 A.2d 1366 (R.I.1982). In situations in which reunification is in the best interests of both the children and the state, the Family Court has the power to enter orders designed to bring about such reunification. *In re Nicole G.*, 577 A.2d at 251. "[I]t is apparent that [DCYF] has an ongoing duty to make reasonable efforts to reunify the families of children in its care."

*Id.* at 249. We have defined the reasonable-efforts standard in our adaptation of New York's Legislative guidelines in the case of *In re Armand,* 433 A.2d 957 (R.I. 1981).

"In *In re Armand,* 433 A.2d 957 (R.I. 1981), this court adopted guidelines earlier enunciated by the Legislature of the State of New York to judge [DCYF's] compliance with the reasonable-efforts requirement. Under these guidelines the agency must demonstrate by clear and convincing evidence that it (1) has consulted and cooperated with parents in developing a plan for appropriate services to the child and his/her family; (2) has made suitable arrangements for visitation; (3) *has provided services and other assistance to the parents so that problems preventing discharge from foster care may be resolved or ameliorated;* and (4) has informed the parents about the child's health, progress, and development." *In re Nicole G.,* 577 A.2d at 249.

Pursuant to G.L.1956 (1981 Reenactment) § 14-1-2, the Family Court is charged with securing for each child under its jurisdiction "such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state." In *In re Nicole G.* we specifically held that the Family Court had the authority to order DCYF to provide housing assistance in cases "in which homelessness is found to be a primary factor preventing reunification of a family." 577 A.2d at 249. We concluded in that case that in situations in which homelessness was the primary barrier to reunification,

"it is rational for the Family Court to find that reasonable efforts have not been made unless and until

[DCYF] provides some type of housing assistance. In such cases housing assistance is the precise type of service contemplated by guideline No. 3 [set forth in *In re Armand* ]; it is assistance designed to resolve or ameliorate the problems preventing discharge from foster care." *Id.*

We restricted our decision in *In re Nicole G.* and allowed the Family Court to order DCYF "to provide housing assistance prior to the filing of a termination petition *as long as it first finds that a lack of adequate housing is the primary factor preventing reunification.*" (Emphasis added.) *Id.* at 250. Although we referred to rental-subsidy payments as a "stopgap measure designed to enable a reunifying family with no savings and little or no income to raise the security deposit and the first few months' rent needed to secure new housing," we limited such payments to the situations wherein homelessness was the primary factor. *Id.* at 250.

By limiting the payment of rental subsidies, we were "confident that the Family Court will structure its orders sensibly and with an eye toward [DCYF's] budgetary constraints and will not order [DCYF] to continue to subsidize families who show no signs of becoming financially independent." *Id.* Unfortunately the Family Court justice went beyond the limitations of *In re Nicole G.* in the present case when he ordered one month's rent to be paid.

In the present case the Family Court justice failed to make any kind of determination that homelessness was the primary barrier to reunification between the mother and her daughters, Amanda and Brittany. Although reunification remained the goal at that time, the children had been removed from the home because of the mother's relapse. The Family Court justice approved DCYF's request for a removal order based on the the mother's use of cocaine and her lack of cooperation in the court-ordered substance-abuse treatment and the violation of the order restraining her boyfriend from being in the company of the children. Nowhere in the record do we find any indication that homelessness was the primary barrier to reunification. In fact it was the mother's behavior that was the primary factor. The payment of rent at that time was not the only barrier remaining to effectuate the ongoing goal of reunification. The mother's demonstrated failure to comply with the existing court order was the major obstacle to reunification.

The facts of this specific case are moot, and we have no intention of ordering the mother to reimburse DCYF for the rental payment. We shall, however, reiterate our holding in *In re Nicole G.* and remind the Family Court of its limitations in the future.

For these reasons the petition for certiorari is granted, the order of the Family Court is quashed, and the papers of the case are remanded to the Family Court with our decision endorsed thereon.

LEDERBERG, J., did not participate.