In re ALAN W.

No. 95–130–Appeal.

Supreme Court of Rhode Island.

Oct. 26, 1995.

Anthony E. Angeli, Jr., Dept. of Children, Youth and Families, Frank P. Iacono, Jr. Court-appointed Special Advocate, for Plaintiff.

Catherine Gibran, Assistant Public Defender, Janice Weisfeld, Assistant Public Defender, for Defendant.

## OPINION

PER CURIAM.

This matter came before the Supreme Court on October 5, 1995, pursuant to an order directing the respondent to appear and show cause why the issues raised in this appeal should not be summarily decided. In this case the father of the respondent minor appeals from a Family Court order terminating his parental rights to his son. The mother of this child has voluntarily terminated her parental rights. After hearing oral argument and reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues should be decided at this time.

The son, who was nine years old at the time of the hearing, was placed in the custody of the Department of Children, Youth and Families (DCYF) in June of 1992. Originally the events supporting the boy's detention contained allegations he had been sexually abused by his uncle. The neglect-dependency-abuse petition filed by DCYF was later amended to allege sexual abuse of the boy by

his father as well. The decree of the Family Court issued on that petition contained findings based on clear and convincing evidence that the boy had been sexually abused by his father.

In this termination petition the trial justice heard testimony from several witnesses, including a DCYF social worker and the boy's therapist. The record reflects that respondent-father is in the Adult Correctional Institutions serving a prison sentence for sexual assaults on other children. He was sentenced to twenty years, eight years to serve and twelve years probation, on twelve counts of sexual abuse of children. The father denied the allegations for some time after going to prison. Ultimately he admitted to the offenses so that he would qualify to receive sexual-offender therapy at the prison.

■ On appeal respondent argues that he has not been given a fair chance at reunification with his son. The trial justice noted, however, that the father had apparently concluded that it was not in his own best interests to admit to the abuse and begin therapy months earlier while awaiting trial. In doing so, the trial justice noted that the father put his own interests before those of his son, who had been in foster care for almost two years.

■ Although this court has stated that parental rights should not be terminated solely because of conviction of a crime and incarceration, we have also held that a parent's imprisonment may be considered along with other factors in deciding whether termination of rights is warranted. *In re Frances*, 505 A.2d 1380, 1385 (R.I.1986). In this case, since the father is serving a sentence of twenty years, eight to serve and twelve suspended, it is likely that he will not be out of prison before his son is fifteen years of age. The trial justice noted in his decision that there is no guarantee that the father will be released from prison prior to the end of his sentence in June 2000.

The boy has stated to his counselors that he hates his father and does not wish to have anything to do with him. He has detailed, in writing, the father's sexual assaults on him. The boy considers his foster family his real family. He is treated no differently from the

biological children in his foster parents' home. The boy's therapist noted that he is in need of a permanent home. In his decision the trial justice found that there is not a substantial probability that the child will return to his father's care within a reasonable period of time considering the child's age and need for a permanent home. The trial justice found that the child is thriving in foster placement, that he is bonding to his foster family, and that it is in the best interest of the child to terminate the father's parental rights.

■ In order to terminate parental rights, DCYF must prove by clear and convincing evidence that regardless of a parent's behavior, the department has made reasonable efforts to encourage and strengthen the parental relationship. *In re Kathaleen*, 460 A.2d 12, 14 (R.I.1983). Reasonable efforts must be defined by the particular facts and circumstances in a case, *In re Ann Marie*, 461 A.2d 394, 395 (R.I.1983), but must include case planning with the parent, arrangements for visitation, and keeping the parent informed of the child's well-being. *In re Kathaleen*, 460 A.2d at 14.

The father persisted in his denials for two years, which prevented him from receiving sexual-abuse counseling at the prison. To his credit, he did not want to have visitation with the boy at the prison. Therefore, DCYF cannot be required to do the impossible or to "hold[ ] the hand of a recalcitrant parent." *In re Kristen B.*, 558 A.2d 200, 204 (R.I.1989).

■ The first step before termination of parental rights can occur is a finding of parental unfitness. Once unfitness has been established, the best interests of the child outweigh all other considerations. *In re Kristina L.*, 520 A.2d 574, 580 (R.I.1987). The finding of unfitness in this case was amply supported by the evidence, and DCYF determined that the likelihood of integrating the child into the house of the father was highly improbable within the foreseeable future. Termination of this father's parental rights, therefore, was clearly in the best interests of his son. For all these reasons the appeal in this case is denied and dismissed,

the order of termination appealed from is affirmed, and the papers of this case are remanded to the Family Court.