**In re JENNIFER K. et al.**

No. 97–544–A.

Supreme Court of Rhode Island.

April 16, 1999.

Thomas J. Corrigan, Jr., Providence, Frank P. Iacono, Jr.

Edward P. Nolan, Jr., Paula Rosin, Providence, Janice Weisfield.

**ORDER**

This case came before the Supreme Court on April 5, 1999, pursuant to an order directing the respondents to appear and show cause why the issues raised in this appeal should not be summarily decided. The respondents, Bruce and Gloria K. (collectively parents or respondents) appeal from a Family Court decree terminating their parental rights to two children, Jennifer K. and Bruce K., Jr. Having heard the parties' arguments and after examining their memoranda, we conclude that cause has not been demonstrated. Therefore, the issue raised in this appeal shall be decided at this time.

Bruce and Gloria K. came to the attention of the Rhode Island Department of Children, Youth and Families (DCYF or Department) in the early 1980s. In 1988, social worker Sandrowski was assigned to respondents and concluded that Gloria's eldest daughter, Miriam,[1] was engaged in sexual behavior with her siblings; that Jennifer (born January 16, 1984) was acting out sexually; and that Bruce, Jr., (born February 26, 1988) was developmentally delayed. In July 1989, DCYF filed a petition alleging that Jennifer was dependent, and shortly thereafter, committed her to the care, custody, and control of DCYF. In addition, social worker Sandrowski prescribed various services for respondents, which included programs at the Providence Learning Center, parental aide services, family counseling, a perpetrators program, counseling for Jennifer, and sexual abuse evaluations of both Jennifer and Bruce, Jr.

In 1992, social worker Chaivaroli was assigned to this case. At that time, Jennifer was six and one-half years old and Bruce, Jr. was three and one-half years old. Social worker Chaivaroli reviewed the case history and assessed the main issues as parenting problems, which included the setting of inappropriate boundaries, and past sexual abuse. Social worker Chaivaroli also found that Jennifer demonstrated inappropriate sexual behavior and that Bruce, Jr. exhibited aggressive behavior. Both parents were referred to a rehabilitative program for perpetrators, but because Gloria denied any sexual abuse issues in her family, she was denied entry.

In May or June 1993, Jennifer demonstrated her sexual behavior in the classroom, Bruce, Jr. exhibited extensive sexual knowledge beyond his five years of age, and Miriam accused her step-father, Bruce, of sexual abuse. Thereafter, the Family Court delivered an ultimatum to Bruce to either vacate the home or, in the alternative, face the prospect that Jennifer and Bruce, Jr. would be placed in DCYR care. Bruce opted to vacate the home and soon was referred for an offender's evaluation. Bruce, however, denied sexually abusing any of his family members, and as a result, was deemed ineligible to participate in a sex offenders' group. Subsequently, Bruce was referred to a different program in order to address his parenting skills; however, he once again failed to comply, this time citing a self-professed inability to learn new techniques unless his children were in his direct care.

In March 1994, Bruce, Jr. was admitted to Bradley Hospital due to homicidal and suicidal tendencies. Six months later, Bruce, Jr. left Bradley Hospital and en-

1. We note that Bruce is not the biological father of Miriam and that Miriam is not included in this appeal. Therefore, we shall only discuss Miriam as necessary.

tered foster care. Thereafter, due to his allegations that he had been sexually abused, social worker Chaivaroli prescribed counseling for Bruce, Jr. As a result of these counseling session, two of Bruce, Jr.'s counselors categorically maintained that he was sexually molested by his father, and subsequently, all visitations were suspended.

Additional testimony concerning Jennifer was elicited from her counselor who had worked with Jennifer for over one year. This counselor, an expert on sexual abuse of children, opined that Jennifer had been severely traumatized, physically abused by Gloria, and sexually abused by both parents. The counselor recommended that no visitation take place between the parents and Jennifer.

Following the presentation of evidence, a Family Court trial justice found "based on their current lack of compliance and the lack of progress toward reunification, that there is no probability that the children will be able to return to the parents' care within a reasonable period of time, considering the children's ages and * * * their need for a permanent home." The trial justice added that respondents "are unable to properly care for children and provide for their needs and that both [parents] have not addressed the major problems that have caused these children to be removed." As a result of these findings, the trial justice terminated both parents' parental rights to Jennifer and Bruce, Jr., and this appeal ensued.

General Laws 1956 § 150–7–7 provides the Family Court shall terminate parental rights if, after notice to the parent and a hearing thereon, the court finds as a fact that:

"[t]he child has been placed in the legal custody or care of the department for children, youth, and families for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed, and provided further that there is not a substantial probability that the child will be able to return to the parents [sic] care within a reasonable period of time considering the child's age and the need for a permanent home." Section 15–7–7(a)(3).

When reviewing cases involving the termination of parental rights, this Court examines the record to determine whether there is legally competent evidence to support the trial justice's findings. In re Kelly S., 715 A.2d 1283, 1288 (R.I.1998); In re Jennifer R., 667 A.2d 535, 536 (R.I.1995). The findings of a trial justice sitting without a jury are entitled to great weight, and this Court shall not disturb those findings unless they are clearly wrong or unless the trial justice overlooked or misconceived material evidence. In re Lori D., 510 A.2d 421, 424 (R.I.1986).

In this case, DCYF provided respondents with an extraordinary amount of social services. The department entered into thirteen case plans with the parents, and provided no less than fifteen different services aimed at both parents and children. Despite these services, respondents have made no progress toward reunification with their children, and as the trial justice found, "compliance with the programs offered by the [d]epartment in recent years has decreased."

Moreover, we are convinced that termination of respondents' parental rights is in the best interest of the children. In re Kristina L., 520 A.2d 574, 579 (R.I.1987). Due to the aforementioned disclosures, Jennifer and Bruce, Jr. have not visited with their parents since September 7, 1995, and November 9, 1995, respectively. Jennifer, now fifteen years old, and Bruce, Jr., now eleven years of age, are both entitled to some permanency in their respective placements. See In re Kelly S., 715 A.2d at 1289. See also In re Lester, 417 A.2d 877, 881 (R.I.1980) (" '[t]he state * * * need not wait until a child's life has been permanently and irretrievably impaired before acting' ").

For these reasons, the respondents' appeal is denied and dismissed. The decree appealed from is affirmed and the papers are remanded to the Family Court.