July 31, 2024

**Supreme Court**

No. 2022-226-Appeal.
(P 19-5996)

In re A.N.                        :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

No. 2022-226-Appeal.
(P 19-5996)

In re A.N.                   :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**    The respondent, Francis N.[1] (respondent or Francis), appeals from a Family Court decree finding that he neglected his daughter, A.N.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth herein, we affirm the decree of the Family Court.

---

[1] Throughout the record, two spellings of the respondent's name appear.  We adopt the version contained in the transcripts for clarity.  Additionally, the Court will refer to the respondent and A.N.'s mother by first name and last initial to protect the identity of the child.  No disrespect is intended.

## Facts and Travel

The Department of Children, Youth, and Families (DCYF or the department) became involved with A.N.'s family on July 16, 2019, when the Rhode Island State Police called the department's Child Abuse Hotline to inform DCYF that respondent had been arrested on felony criminal charges. The respondent was charged with two counts of indecent solicitation of a child and one count of electronically disseminating indecent material to a minor.

Kevin Palumbo, a Child Protective Investigator for the department (Mr. Palumbo), opened an investigation into the allegations. Mr. Palumbo spoke to a Rhode Island State Police detective who informed him that respondent was arrested on July 15, 2019, for electronically disseminating indecent material to a minor and for the indecent solicitation of a child. The detective also informed DCYF that respondent "admitted that he had initiated communication about sex with a fictitious 13-year[-]old girl online." The respondent further admitted to soliciting sex from a person he believed to be a thirteen-year-old girl, requesting nude images, and that he had sent a photograph of his penis to the fictitious thirteen-year-old. The detective informed DCYF that respondent was prohibited from having any unsupervised contact with children.

Thereafter, Mr. Palumbo met with Rachel N., A.N.'s mother and respondent's wife, at their home in Providence, Rhode Island. The investigator informed her that

her husband had been charged with a sex crime and that he could not be in the home with the children. Rachel stated that respondent would be moving to his mother's home and that she was unaware of his conduct online. Rachel also informed DCYF that respondent had two other children with another woman; the investigator noted in his report that their mother had obtained temporary custody of the two children following respondent's arrest. The respondent refused to discuss the criminal case with the DCYF investigator; however, he agreed to move into his mother's home and to refrain from unsupervised contact with his children.

On December 26, 2019, DCYF filed the instant neglect petition, which alleged that A.N.'s parents failed to provide her with a minimum degree of care, supervision, or guardianship, and that she was without proper care or supervision. DCYF was granted temporary custody of A.N. As of February 2020, A.N. resided with her paternal aunt and stayed with her paternal grandmother on occasion. DCYF informed Rachel, A.N.'s mother, that pursuant to the department's policy, A.N. needed to reside with her unless another residential arrangement was specifically approved by DCYF.

Due to some discrepancies about A.N. and her father's living situation, DCYF filed an emergency motion for change of placement. In the motion, the department

asserted that respondent had moved back into the family home,[2] that A.N. continued to stay with her paternal aunt or paternal grandmother, that A.N.'s mother was spending time with her at relatives' homes, and that A.N. never returned to the family home. Moreover, the department stated that A.N.'s mother and father failed to maintain contact with DCYF and treatment providers, and that they failed to engage in services. Consequently, DCYF indicated to the Family Court that there was "a substantial, immediate danger to the child * * *."

A permanency hearing was held on December 18, 2020. A decree entered providing that the new case plan was approved and that the child would remain in the care, custody, and control of DCYF until further order of the court. In relevant part, the case plan required respondent to focus on change, engage in services, control his impulses, work closely with the department, refrain from illegal conduct, and provide the department with a sexual offender evaluation to assess the risk to his daughter. The caseworker also encouraged respondent to move out of the home "so [A.N.] is not displaced to other family member[s'] homes." At a hearing on October 21, 2021,[3] DCYF offered to amend the petition to dependency for both

---

[2] In its motion, DCYF explained that respondent informed the department that he could no longer live at his mother's home because he needed an address as a condition of bail in the pending criminal case.

[3] At the hearing, DCYF disclosed that the existing Family Court orders, which allowed respondent to have supervised visitation with his children, conflicted with a condition of bail set by the Superior Court in respondent's criminal case that required him to have no contact with minors. Accordingly, the trial justice vacated the prior

- 4 -

parents. A.N.'s mother admitted to dependency; nonetheless, respondent declined to do the same.

Thereafter, the instant neglect petition was heard on January 11 and February 21, 2022. At the outset of trial, respondent's counsel advised the court that his client intended to invoke his Fifth Amendment privilege against self-incrimination. On direct examination, respondent testified that he was A.N.'s father, that he resided in Providence, Rhode Island, and that his parents helped support him and his daughter. The respondent testified that he was looking for a job; however, he acknowledged that he was not providing financial support to A.N. due to his unemployment status. When asked about the last time he visited with A.N., respondent said that he had not seen her and that he "tried reaching out to [the department], but everytime [he] talk[s] to the worker, * * * it's really bad." He testified that the conversation goes "nowhere" and that the DCYF caseworker "degrades" him.

When asked about the events leading up to DCYF's filing of the neglect petition against him, respondent repeatedly invoked his Fifth Amendment right against self-incrimination. For instance, when asked about his arrest on July 15, 2019, he "[pled] the Fifth." Likewise, when the DCYF attorney asked about his interview with a state police detective, he invoked his Fifth Amendment privilege.

visitation orders. The trial justice explained that, if the Superior Court modified his bail conditions, respondent could have visitation at the department's discretion, supervised only by DCYF.

When asked about his communication with or solicitation of a fictitious thirteen-year-old girl, respondent maintained his right against self-incrimination. The respondent also pled the Fifth Amendment when asked questions related to whether he solicited nude images from a person he believed to be a thirteen-year-old girl, whether he sent a photograph of his penis to the person he believed to be a thirteen-year-old girl, and whether he communicated with her via text messages. Moreover, respondent also invoked his right against self-incrimination when asked about his contact with A.N. from July 2019 to October 2021. The respondent denied that DCYF had contacted him about referrals to services.

On cross-examination by A.N.'s guardian *ad litem*, respondent said that he had lived with his parents as of July 2019 per DCYF's recommendation; but, he declined to answer where he had lived before that and asserted his Fifth Amendment privilege. The respondent also invoked his Fifth Amendment right when asked how old his daughter was when he moved out and regarding questions about his pending criminal case, when his computer was seized in 2010, and whether he had child pornography on his computer in 2010.

With respect to DCYF's initial investigation by Mr. Palumbo, respondent invoked his Fifth Amendment right. The respondent did testify that the investigator "didn't let [him] speak and was very disrespectful. He pretty much was beating [him] down." The respondent felt that Mr. Palumbo prejudged the allegation and

did not attempt to find the truth; he explained that the investigator "made a decision, and that's it." The respondent recalled that it was "a very stressful scenario," and that the investigator made him "feel like [he] was already guilty." He also testified that the investigator had told him he needed to leave the home, but that he was already packing to leave as he was advised. On examination by his attorney, respondent said that currently he had regular visitation with his daughter, every Friday, for an hour.

The department then called to the stand Yahayra Genao, the social caseworker assigned to A.N.'s case since November 2020. The caseworker explained that DCYF's priority was the child's safety and ensuring that she was supervised at all times with her father, due to his pending criminal case. Ms. Genao recalled that she asked respondent to submit to a sex offender evaluation, and was told that he had already completed one, but declined to sign a release to the department. The caseworker's objective was to work with respondent on case planning and the ultimate goal was reunification. She testified that respondent expressed a desire to reunify with A.N. though he declined to engage in the necessary services to effectuate reunification with his child. The caseworker clarified that the starting point was to submit to the sex offender evaluation to assess the risk to A.N. Indeed, the caseworker encouraged supervised visitation and wanted respondent to have a relationship with his daughter. Starting in December 2020, respondent was allowed

visitation with A.N. every weekend for four hours. However, respondent had declined to comply with, or agree to, a case plan.

Ms. Genao advised the court that respondent and his wife were living at the same home and A.N. was staying with her paternal aunt. The respondent's visits with his daughter were supervised by A.N.'s paternal aunt and grandmother until October 2021, when the trial justice learned of his bail conditions in the pending criminal case.[4] After that point, Ms. Genao reached out to respondent to discuss a plan for visitation, but he would not return her phone calls or engage in case planning. From October 2021 to January 2022, Ms. Genao explained that she had no contact with respondent due to his refusal to engage with DCYF. Prior to that point, Ms. Genao spoke to respondent monthly.

After the department rested its case, respondent declined to present any witnesses. The respondent, through his counsel, argued that there was insufficient evidence that the criminal allegations posed a threat to his daughter. The respondent conceded that the trial justice had discretion to draw inferences because he asserted his Fifth Amendment right against self-incrimination but argued that it was not mandatory. He said that, while the neglect proceedings were civil in nature, they

---

[4] On November 4, 2021, a Superior Court justice granted respondent's motion to modify bail conditions to allow supervised contact with his children and other children under the age of sixteen.

were also quasi-criminal and it would be improper to draw negative inferences regarding his Fifth Amendment right.

In response, the department argued the trial justice could draw a negative inference from the fact that respondent asserted his Fifth Amendment privilege to questions related to his pending criminal case. DCYF maintained that respondent's lack of testimony supported its allegation that he neglected A.N. Likewise, A.N.'s guardian *ad litem* argued that there was clear and convincing evidence that respondent had neglected his daughter and that it was proper for the court to draw a negative inference from his invocation of his Fifth Amendment privilege as this was a civil matter. Notably, the guardian *ad litem* argued, respondent ceased visitation with A.N. when the Family Court ordered that DCYF supervise visitation and he had no contact with DCYF thereafter, effectively abandoning A.N. since October 2021.

On April 18, 2022,[5] the trial justice issued her decision granting DCYF's neglect petition against respondent and ordering that A.N. be committed to the care, custody, and control of the department until further order of the court. In rendering

---

[5] The respondent's criminal case was disposed of before the trial justice issued a decision in this case. The respondent pled nolo contendere to one count of indecent solicitation of a child, and he was sentenced to a five-year suspended sentence and five years of probation. The court also required that respondent engage in a sex offender program and register as a sex offender. The other two counts were dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. There is no evidence in the record to indicate that this information was brought to the trial justice's attention before she issued her decision in this case.

her decision, the trial justice explained that respondent's testimony was "evasive and hostile." She referenced his invocation of his Fifth Amendment right against self-incrimination when asked questions about his residence, the pending criminal charges, and where he was living at the time he was charged. Furthermore, the trial justice explained that respondent invoked his Fifth Amendment privilege when he was asked about sending a photograph of his penis to a person he believed to be a thirteen-year-old girl, whether he knew the person he was communicating with was a thirteen-year-old girl, whether he solicited the fictitious child for nude images or sex, and whether his computer was confiscated in 2010 in relation to a criminal investigation for possession of child pornography.

Ultimately, the trial justice found by clear and convincing evidence that respondent had failed to demonstrate any protective capacity or willingness to address the issues that led to DCYF's filing of the neglect petition. She explained that respondent lacked any insight as to the department's concerns regarding A.N.'s safety in light of the criminal charges against him. The trial justice reasoned that "based on the social caseworker's and [respondent's] testimony and evidence introduced at trial, this [c]ourt may and does draw inferences from [respondent] invoking his Fifth Amendment [r]ight when asked about [the] specific conduct and circumstances" that led to the instant neglect case. Moreover, respondent conceded that he was unemployed and was providing no financial support to his daughter. The

trial justice found by clear and convincing evidence that respondent neglected A.N. based on the risk of harm to her relative to his pending criminal allegations, and his failure to provide her with a minimum degree of care, supervision, or guardianship. The trial justice further found that A.N. was without proper care and supervision with respect to respondent.

The Family Court ordered that A.N. be placed with her mother, that respondent continue to have visitation supervised by DCYF, and that he was required to undergo a sexual offender risk assessment. A decree entered consistent with the trial justice's decision. Thereafter, respondent filed a timely notice of appeal.

## Standard of Review

Rule 22(b) of the Family Court Rules of Juvenile Proceedings provides that a "determination that a child is dependent, neglected, or abused shall be made based on findings of fact and upon clear and convincing evidence * * *." R. Juv. P. 22(b). "It is well settled that the clear and convincing standard is 'a higher standard of proof than that of a fair preponderance of the evidence but less than that required for proof beyond a reasonable doubt.'" *In re Sophia M.*, 204 A.3d 605, 609 (R.I. 2019) (quoting *In re Emilee K.*, 153 A.3d 487, 497 (R.I. 2017)). This Court has emphasized that "the clear and convincing standard is significant, * * * and requires that the fact-finder form a clear conviction without hesitancy of the truth of the precise facts

- 11 -

in issue." *Id.* (internal quotation marks, citations, and brackets omitted). "Nonetheless, it remains true that a trial justice's 'findings are entitled to great weight and will not be reversed on appeal unless the trial justice overlooked or misconceived material evidence, or was otherwise clearly wrong.'" *Id.* (quoting *In re Madlyn B.*, 187 A.3d 1105, 1118-19 (R.I. 2018)). "Accordingly, on appeal, this Court will 'examine the record to determine whether legally competent evidence exists in it to support findings made by the trial justice.'" *Id.* (quoting *In re Adner G.*, 925 A.2d 951, 957 (R.I. 2007)).

**Discussion**

On appeal, respondent argues that this Court should vacate the Family Court's finding of neglect against him because the trial justice erred by drawing adverse inferences from his assertion of his Fifth Amendment right against self-incrimination. Indeed, he maintains that "[i]t is clear the trial court erred in[] attributing evasiveness and hostility to the simple assertion of a constitutional right." He further argues that the Family Court's "leap, hop[,] and jump to infer that he had neglected his daughter * * * beggar[s] due process requirements, * * * [and] rest[s] on a record devoid of factual support * * *." The respondent contends that the adverse inferences drawn from his pending criminal case were insufficient to support a finding of neglect. He claims that the trial justice overlooked the fact that his

- 12 -

family was intact prior to DCYF involvement, that he was invested in reunification, and that his family was supportive.

Conversely, DCYF avers that the trial justice's finding of neglect should be affirmed as it was based on clear and convincing evidence. The department argues that this Court has held that the Family Court has properly drawn adverse inferences when a parent refused to participate in case planning or answer certain questions at trial. In support of its argument, DCYF relies on our holdings in *In re Rita F.*, 64 A.3d 1220 (R.I. 2013), *In re Jazlyn P.*, 31 A.3d 1273 (R.I. 2011), *In re Destiny D.*, 922 A.2d 168 (R.I. 2007), and *In re Rosalie H.*, 889 A.2d 199 (R.I. 2006). Indeed, the department contends that respondent's alleged criminal conduct posed a risk to A.N. and that the trial justice was justified to attribute evasiveness and hostility to his testimony. Additionally, the department clarified that the trial justice relied on other evidence in finding that respondent neglected A.N., i.e., that respondent demonstrated an indifference to his daughter's needs by choosing to reside at the family home, effectively displacing the child. Likewise, respondent refused visitation supervised by DCYF, failed to provide any financial support for his daughter, and refused to release his completed sex offender evaluation. The Office of the Court Appointed Special Advocate (CASA) also asks this Court to affirm the trial justice's finding of neglect as it was supported by clear and convincing evidence

and maintains that it was proper to draw adverse inferences when respondent repeatedly invoked his right against self-incrimination.

"The Fifth Amendment privilege against self-incrimination 'may properly be invoked in a civil proceeding regardless of whether there is a pending criminal matter arising out of the same set of factual circumstances.'" *In re Rosalie H.*, 889 A.2d at 206 (quoting *Tona, Inc. v. Evans*, 590 A.2d 873, 875 (R.I. 1991)). Moreover, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify." *Id.* (quoting *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995)). "Rather, a party's silence should be considered in light of all the other evidence." *Id.*

In *Tona, Inc.*, we explained that there are limitations on the right to invoke the Fifth Amendment privilege. *Tona, Inc.*, 590 A.2d at 876. Whether the privilege applies in a particular context "must be determined by the court on a question-by-question basis." *Id.* "The mere threat of criminal prosecution is insufficient to justify a blanket assertion of the Fifth Amendment privilege." *Id.* We have held that the Fifth Amendment did not preclude the use of a mother's prior statements to police, which were obtained in connection with a criminal investigation into the death of a three-year-old who was in the mother's care, after she refused to testify in a proceeding to terminate parental rights to her children. *See In re Destiny D.*, 922 A.2d at 173-74.

- 14 -

In this instance, the trial justice was entitled to draw adverse inferences against respondent who refused to answer questions about his pending criminal case or DCYF's investigation and instead repeatedly invoked his Fifth Amendment right against self-incrimination. *See In re Rita F.*, 64 A.3d at 1231 ("[I]t was proper for the trial justice to draw an adverse inference when respondent refused to answer any questions whatsoever."); *see also In re Rosalie H.*, 889 A.2d at 206 (rejecting parents' argument that participating in DCYF case plans would subject them to criminal liability and holding that trial justice did not infringe upon parents' right against self-incrimination); *In re Amber P.*, 877 A.2d 608, 616 (R.I. 2005) (holding that trial justice was entitled to weigh respondent's failure to submit to sex offender counseling in considering DCYF's termination petition).

When asked about the events leading up to DCYF's filing of the neglect petition, respondent repeatedly invoked his Fifth Amendment privilege. The respondent refused to answer questions regarding his arrest or the circumstances that led to the criminal case or DCYF's involvement with A.N. There were several instances in which respondent invoked the Fifth Amendment, even with respect to questions that were not in connection with his criminal case, such as where he was living when DCYF opened its investigation and his contact with A.N. from July 2019 to October 2021. The trial justice's finding that respondent was "evasive and hostile" is well supported by the record. In light of all the other evidence adduced

at trial, it was appropriate for the trial justice to draw adverse inferences when respondent refused to answer questions regarding his pending criminal charges, DCYF's investigation, his residence, or his contact with the child. *See In re Rita F.*, 64 A.3d at 1231; *In re Rosalie H.*, 889 A.2d at 206; *In re Amber P.*, 877 A.2d at 616.

After our careful examination of the record, we conclude that there exists clear and convincing evidence to support the trial justice's finding of neglect. The record is replete with evidence that the respondent failed to meaningfully engage with DCYF relative to case planning or services. The respondent refused visitation supervised by the department, refused to provide his completed sex offender evaluation to his caseworker to assess the risk to A.N., and had no contact with his caseworker for months leading up to trial. In this case, the respondent manifested a blatant disregard for A.N.'s safety in relation to his pending criminal charges and her needs by displacing his daughter from the family home to instead live with relatives, in effect abandoning her to prioritize his own needs. *See In re Rosalie H.*, 889 A.2d at 208 (finding that parents' "wholesale rejection of the services provided to them, while their children were in DCYF custody for over two years, demonstrated that [parents] exalted their own interests over those of their children"); *see also In re Alan W.*, 665 A.2d 877, 878 (R.I. 1995) (affirming termination of father's parental rights where "father put his own interests before those of his son, who had been in foster care for almost two years"). Significantly, the respondent

conceded that he not only displaced the child from the family home but further provided no financial support to her. While the respondent insists that he was committed to reunification with his daughter, the record before us tells a different tale. We are satisfied that there is clear and convincing evidence to support the trial justice's finding that the respondent neglected A.N. based on the risk of harm to her in relation to his pending criminal charges and his failure to provide her with a minimum degree of care, supervision, or guardianship. Therefore, we discern no error.

## Conclusion

For the reasons set forth herein, we affirm the decree of the Family Court. The record may be returned to that tribunal.

STATE OF RHODE ISLAND

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re A.N. |
| **Case Number** | No. 2022-226-Appeal.<br>(P 19-5996) |
| **Date Opinion Filed** | July 31, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Elizabeth Ortiz |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Benjamin Copple<br>Department of Children, Youth and Families<br><br>Andrew J. Johnson<br>Court Appointed Special Advocate |
| | For Respondent:<br><br>George J. West, Esq. |